## Haywood v. Commonwealth.

(Decided December 1, 1914.)

### Appeal from Warren Circuit Court.

1. Criminal Law—Evidence of Conviction for a Felony—Admonition of Court.—When it is shown by the defendant's evidence that he has been convicted of a felony, it is proper that the court should admonish the jury that this evidence is only admissible for the purpose of impeaching the character of the witness; but the failure to give this admonition will not be error unless the attention of the court has been drawn to the matter by a request that the jury be so admonished.

2. Criminal Law—Evidence of Other Offenses.—As a general rule it is not proper to permit evidence of other disconnected offenses, but where it was competent for the Commonwealth to prove that the defendant had been confined in jail and the circumstances of his confinement, it was not error to show the offense for which he was committed.

3. Criminal Law—Evidence—To Show Interest or Feeling of Witness. —It is proper to require a witness to relate his relations with the

parties for the purpose of showing his bias or prejudice or interest in the result of the trial, so as to enable the jury to place the proper estimate upon the weight that should be given to his evidence.

W. R. SPECK and A. C. DULANEY for appellant.

JAS. GARNETT, Attorney General; M. M. LOGAN, Assistant Attorney General, and ROBT. T. CALDWELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant, under an indictment charging him with the murder of Lucy Whitney, alias Pearson, when put upon his trial before a jury, was found guilty and his punishment fixed at death.

On this appeal we are asked to set aside the judgment and remand the case for a new trial on account of alledged errors committed by the trial court prejudicial to the substantial rights of the accused.

It is shown by the evidence that Lucy Whitney, alias Pearson, and her husband, Charles Pearson, lived in a little house in the city of Bowling Green, and that on the night of March 17, 1914, about eight o'clock, while she and her husband were sitting by the fire facing a small window, three shots from a gun loaded with shot were fired at her through the window. How many of these loads of shot struck her is not clearly shown, but, at least, one of them did, as she died within a few minutes from the effect of the wounds.

Within less than an hour after the shots were fired, the appellant was arrested charged with the crime, and the evidence upon which he was convicted is substantially this: Some thirty days before Lucy Whitney was shot the appellant, upon the charge of whipping his wife, had been found guilty in the police court of Bowling Green and sentenced to a term of imprisonment in the city jail for a period of forty-five days. After being confined under this sentence for about thirty days, he was treated by the police authorities as a trusty and allowed to do little jobs of work about the jail and to go about the city as he pleased, returning to the jail at stated times of the day and night.

At the jail there was kept in a little room or closet six shotguns known as "pump guns," and also a lot of ammunition in the form of shells loaded with powder

and shot of different sizes. The door of the little room in which these guns and ammunition were kept was generally left open, or rather, unlocked, and especially was this so at the time Lucy Whitney was killed. The appellant, as a trusty, knew the location of this room, that guns and ammunition were kept in it, and had free access to it.

On the afternoon of the day Lucy was killed the appellant left the jail about three o'clock and was to return about six. What time he did return is not shown, except by the circumstance that between six and seven the supper that had been put in one of the rooms for him was eaten, and by his own evidence that he returned about seven o'clock.

Within a few minutes after Lucy was killed, a policeman, who had been summoned, reached the house and found on the ground outside of the window through which the shots were fired two empty shells. This policeman, with perhaps another officer, a little while after this found the appellant on the streets of Bowling Green, and, after arresting him, took him to the station house. When they arrived at the station house, the guns were examined by two or three of the officers, and the barrel of one of them was found to be cold, as if it had been exposed to the cold air, while the barrels of the others were warm, and an examination of the cold gun showed it had been recently fired. It was also discovered that the two empty shells found by the officer were the kind and quality of shells kept with these guns at the jail.

It was also shown that on the day Lucy was killed she said to the appellant, "You ought to be ashamed of yourself telling lies on me, and if you don't quit, I am going to have the Chief lock you up," and that the appellant, a little while after this, said, in substance, that Lucy would never get to tell the Chief anything that would keep him at the station house at night.

Will Martin, a colored boy about 18 years old, the only witness for the Commonwealth who positively identified the appellant as the person who did the shooting, testified that he knew Lucy Whitney and her husband, and Jim Haywood and his wife, all of whom were colored people living in little houses near to each other; that he was at appellant's house about eight o'clock the night Lucy was killed and saw the appellant take a gun off of his bed and commence pumping cartridges out of it; that appellant's wife said to him, "Don't you shoot in

here. If you are going to shoot in here let me out," and he said, "Get out then," and his wife went out and walked down to the house of another colored woman; that he went out of the house about the time that appellant's wife did, and was followed out of the house by the appellant, who had the gun in his hand. He says that he saw the appellant go to the window of Lucy's house and put the gun to the window and fire at least two shots. He identified the gun exhibited on the trial as like the gun he saw the appellant have, and also said that the empty cartridges were like the cartridges he saw the appellant pumping out of the gun.

Another witness testified that she heard the shots fired and immediately after saw a man running from Lucy's house, but did not know who it was.

The appellant, in his own behalf, denied that he took or had the gun or did the shooting, but admitted going to the jail house about seven o'clock and eating his supper, and said that after leaving the jail, he walked around on the streets until he was arrested by the policemen. He also denied having made any threats against Lucy Whitney or that he ever said she would not get to tell the Chief of Police about him, and also denied everything that Will Martin testified to as having happened in his house.

The only other witnesses introduced for appellant were Luther Cherry and Lawrence Graham, both of whom said that they saw him about six o'clock and also about nine o'clock.

The evidence we have related, both circumstantial and positive, makes out a convincing case for the Commonwealth, and it stands uncontradicted, except by the evidence of the appellant.

It is also worthy of notice that there is no suggestion in the record that any person other than the appellant committed the crime or had any cause to commit it.

It is also true that the evidence shows the appellant had little reason to be offended with or unfriendly toward Lucy, and wholly fails to show any cause that would, in the slightest manner, extenuate his offense.

Coming now to the grounds urged for reversal, it appears that, on his cross-examination, appellant was asked if he had not been confined in the State penitentiary, and he answered that he had. It is now insisted that when this answer was made the court should have admonished

the jury that this evidence was admitted solely for the purpose of impeaching appellant as a witness. Doubtless the trial judge would have so admonished the jury if his attention had been called to it at the time; but the failure of the court to so admonish the jury cannot be relied on as error unless the attention of the court has been drawn to the matter by a request that the jury be so admonished. Ochsner v. Com., 128 Ky., 761.

On the examination for the Commonwealth of George Romans, a policeman, he was asked, referring to the time Lucy Whitney was killed, "At that time, where was Haywood staying? A. In the station house. Q. Confined? A. He was trusty down there. Q. What do you mean by that? A. They let him out to clean the station house and fire the furnace. Q. Did they let him go any place he wanted to go? A. Yes; they let him go out in town. I heard some of them talking about his going home. He was permitted to go if he wanted to. Q. What was he charged with? A. With whipping his wife. Q. Do you know how long he was in there for? A. 45 or 50 days, I think."

To the question, "What was he charged with?" counsel for appellant objected and excepted, and it is now insisted that it was prejudacial error to permit the witness Romans to give evidence of a particular offense that the appellant had committed.

In the Ochsner case there will be found an extended discussion of the practice, showing it to be error to prove that one on trial charged with a particular offense has committed some other disconnected offense, and except for the circumstances under which this evidence of the cause for which the appellant was confined in jail was elicited, there would be much force in the argument of counsel that it was serious error to admit it; but we think the objection to its admission is removed when the other admissible evidence showing his confinement in the jail is considered in connection with the offense for which he was there confined.

It was, of course, competent for the Commonwealth, in developing its theory of the case, to show where these guns and cartridges were kept, and why the appellant knew where they were, and that he had free access to them. In bringing out this matter it was also perfectly competent to show that he had been sentenced to confinement in jail, and also that he was treated as a trusty and allowed the liberty of the city. It being thus com-

petent to show these facts, although technically it was error to prove why he was confined in the station house, we do not think it was prejudicial to do so. The ground upon which evidence of this kind has been held incompetent is, that it has a tendency to prejudice the jury against the person on trial by bringing to their attention the fact that he has committed other offenses disconnected with the matter for which he is being tried. But in this case it was, as we have seen, competent to show that he had committed another offense for which he was then confined in the jail, and this being so, we do not regard the evidence showing the offense for which he was committed as at all prejudicial.

Another assigned error is the failure of the trial court to permit counsel for appellant to show by appellant the relations between his wife and Will Martin, the purpose of this line of examination being, as stated by counsel for appellant, to show that some improper relations existed between the wife of appellant and Martin, on account of which Martin entertained toward appellant ill-feeling. The only evidence we find in the record upon this subject is this: Appellant said that he saw Martin about one o'clock on the day Lucy was killed. He was asked, "Did you have any words with Will Martin? A. I saw him before I got arrested. Q. Did you have any trouble? If so, what about? A. I told him to stay away from the house." "Objection sustained as to what defendant told Martin." "Q. What was the trouble? About my wife." "Objection sustained." "Q. What was said?" "Objection sustained." "Q. Did you ever order Will Martin to stay away from your house?" "Objection sustained." "Q. What was the feeling of Martin toward you, kind or unkind? A. The feeling was unkind."

It was ruled in Leach v. Com., 129 Ky., 497, to be admissible "to require a witness to relate his or her relations with the parties to the litigation, and in Commonwealth cases, with the accused or the prosecuting witness, or the deceased, if the prosecution is for homicide, for the purpose of showing his bias or prejudice or interest in the result of the trial, so as to enable the jury to place a proper estimate upon the weight that should be given to his evidence."

According to this, it would have been competent to have shown by Will Martin, or appellant, or both of them, the relations that existed between the wife of ap-

pellant and Martin and the state of feeling that existed between Martin and appellant, so that the jury might be better prepared to determine the weight that should be attached to the evidence of Martin; but, as the record does not disclose what appellant would have said, if permitted to answer the questions that were asked him, we cannot say whether or not it was prejudicial to refuse to permit him to answer. It appears, however, that appellant did testify that there was some trouble between Martin and himself about appellant's wife, and that the feeling between them was unkind, and we think this was the substance of all that appellant could properly have said if permitted to relate at more length the state of feeling that existed between himself and Martin. With this evidence before them, the jury could not fail to understand that there was some bad feeling between appellant and Martin, and it seems manifest that the rights of appellant were not at all prejudiced by the manner in which the examination into the evidence on this feature of the case was conducted.

We might further add that the record shows that the defense for the appellant was skilfully managed and everything was done for him in the trial court that capable counsel could do, and in this court his defense has been well presented. In view of the extreme penalty inflicted, we have given to this record very careful consideration, but do not find any reason that would justify us in remanding the case for a new trial. In our opinion, the appellant had a fair trial and full opportunity to present his defense.

Wherefore, the judgment is affirmed.