CASE 19—INDICTMENT—JANUARY 29.

## Wright v. Commonwealth.

APPEAL FROM LETCHER CIRCUIT COURT.

1. THE ONLY CASES IN WHICH A PERSON OTHER THAN A PEACE OFFICER CAN MAKE AN ARREST are, where the person making it has reasonable ground to believe the person arrested has committed a felony, and where a magistrate or judge orders the arrest of one at the time committing a public offense in his presence. And not even a peace officer is authorized to make an arrest without a warrant issued and

delivered to him, except when a public offense is committed in his presence, or when he has reasonable grounds to believe that the person arrested has committed a felony.

2. A PERSON ABOUT TO BE ARRESTED MAY RESIST if the provisions of section 39 of the Criminal Code are not complied with by the person attempting to make the arrest, as an arrest to be lawful must be made in the manner provided by that section.

3. DEFENSE OF DWELLING.—When a dwelling-house is actually broken and entered by a portion of a party combined and armed for the unlawful purpose of depriving one of the inmates of his liberty, and carrying him away in the night time, accompanied with an attempt to commit a felony, the person thus assaulted, as well as the owner of the dwelling, may resist with such force as may be necessary, even to taking the life of those present aiding and assisting, as well as those actually breaking and entering; and the owner of the building is not required to remain in his house, nor to retreat from his house, but he has the right, outside or inside, to use such force as is necessary, or reasonably appears to him to be necessary, even after the party has fallen back, to prevent any further assault upon his person or his castle.

4. SAME.—When a case arises justifying the owner in resisting the breaking or forcible entrance of his dwelling-house, his servants or guests may arm themselves for the purpose of resistance.

5. EVIDENCE—CONSPIRACY.—Where two persons are indicted jointly, the mere fact that a conspiracy is *charged* is not sufficient to deprive one of the testimony of the other; to have that effect, the charge must be sustained by the proof.

6. INSTRUCTIONS.—It was error for the court in instructing the jury to direct their attention to the interest of witnesses in the result, or to the character of the statements made by them.

CONNOLLY & CLINE AND JAMES M. YORK FOR APPELLANT.

The parties attempting to arrest the appellant and his brother were without authority to do so, and even if they had authority, did not attempt to exercise it in a lawful manner. Therefore, the appellant had the right to use such force as appeared to him at the time to be necessary to protect himself or family or guests from loss of life or great bodily harm, and the court should have so instructed the jury.

P. W. HARDIN, ATTORNEY-GENERAL, FOR APPELLEE.

No brief in record.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellant having, under a joint indictment against him and his brother Elijah Wright, for the murder

of William Wright, been convicted of manslaughter and sentenced to the penitentiary for twenty-one years, appeals.

The homicide occurred between nine and ten o'clock at night, on the premises of appellant, near his dwelling-house, where the deceased, who was his uncle, had gone, accompanied by ten others, all but four being relatives and two of them brothers of appellant. It appears that all the party, except the deceased and one other, was armed with guns or pistols, and by agreement, when near the house, divided, two or three going to the back and the others to the front door; and their approach was so noisy and demonstrative as to awaken those inside, all of whom had gone to bed. One of those who went to the back door was a brother of appellant called "Black Hawk," who said in a loud angry tone, "Damn you, open the door," adding significantly, "Black Hawk is here now." The reply of the appellant was, "Damn you, open the door yourself if you want it opened." And upon the same response being given to the second demand made with a threat to kick the door down, it was kicked down, the shutter falling inside upon a man named Johnson, who was sleeping on the floor. The inmates of the house at the time were appellant, his wife, five children, Elijah Wright, who was there for the night, and Johnson. When the door was thus forced open appellant was confronted by his brother "Black Hawk" with a gun presented, and Elijah by another called Lunce Wright, likewise armed.

The evidence tends to show the first shot was fired by Elijah at Lunce Wright, the shooting between the two

beginning soon after the door was broken. But it clearly appears that appellant did not attempt to shoot until two or three shots had been fired in his house, one of them being aimed directly at him by "Black Hawk," whom he then shot at and wounded. As soon as the latter was shot he called on the crowd to rush up, whereupon appellant cried out for God's sake to stop firing into his house, as they had already killed one of his children. This, however, turned out not to be true, though amidst the noise and confusion caused by the firing and screaming and crying of his wife and children, appellant might have reasonably supposed one or more of them was killed. Perdue, one of the crowd, then called on them to fall back and give the woman and children a chance to get out, and the party did then fall back towards the corn-crib, forty or fifty feet, where they stopped, still facing the house. Soon after that, appellant having been told by Elijah that the party outside were reloading their guns, and directed to load his quick, went outside the house in his night clothes, and from the chimney corner fired the shot that killed William Wright.

The proof is that it was a moonlight night, the snow was on the ground, and that appellant Wright had recognized the deceased at the time he fired. On the other hand, while it is only an inference, though a strong one, that any others of the party besides the two at the back door, fired into the house before they fell back to the corn-crib, it is proved that about the time appellant shot from the chimney corner, firing was going on, as the witnesses say, in all directions, at least two shots being in the direction of the house.

One of these was fired by a person near the deceased, in the language of a witness, almost instantaneous with the one by appellant, the load striking the house near to him. The other was fired just before, from the same vicinity, by "Black Hawk," and by it Andrew Wright, one of the party coming from the house towards the corn-crib, was killed. That shot was evidently fired under the belief the person shot at was either appellant or Elijah Wright, for "Black Hawk" cried out with an oath, when Andrew Wright fell, that he had got one of them.

It appears that soon after the crowd fell back Elijah Wright fled from the house; but the precise time he left does not appear, though he fired and was fired at as he retreated, one of the persons firing at him being a justice of the peace.

It may be inferred that the ostensible purpose of the crowd in going to the house of appellant was to arrest Elijah Wright upon a charge of breach of the peace. One of them, the justice of the peace, testified he issued a warrant against him late in the evening of the day of the homicide, but the court excluded that testimony. So the only evidence before the jury that a warrant was issued at all, was by a witness, who stated he heard appellant and Elijah Wright talking about a warrant, and that the former told the latter if he would go home with him and stay all night they would not arrest him. And it is proper to state in this connection that the testimony of that witness tended to show appellant intended to resist the arrest of his brother, if attempted at his house. But there was no officer except the justice of the peace in the party when they went to the house

of appellant, and the only pretext of authority of any one of them to make an arrest, was the attempt of the justice of the peace to deputize Perdue, a private citizen, to do so.

There is no evidence that any one of the party informed Elijah Wright, when they reached the house, they came to arrest him, or that a warrant had been issued for his arrest; and it does not appear that either the justice of the peace or Perdue spoke to appellant or Elijah Wright at any time that night. The only intimation given to them that the object of the crowd in going there was to make the arrest, was by "Black Hawk," who said, when he went to the back door, "Consider yourselves under arrest," accompanied with the remark, "Damn you, open the door;" and only one witness, he who was aiding in breaking the door, testifies to that fact.

It is proper to state, as illustrative of the feelings and motives of some of the party, that the justice of the peace testifies his object in going to the house of appellant was to protect him and Elijah from being hurt; yet he admits he fired at the latter as he was fleeing from the house. It was also proved that "Black Hawk" said, at the time the warrant was issued, that some one was going to be killed, and he did not like Elijah. Yet he was the one selected or permitted to demand admittance to the house.

There seems to have been some disturbance of friendship between appellant and William Wright, though there is no proof of a direct threat by either to do the other personal injury.

It is, however, proved that Elijah Wright had made

threats against two or three persons, including the de-
ceased, on account of a law-suit.

A somewhat extended statement of the facts in this
case has been made, because necessary to determine the
various errors complained of.

1. We think the court erred in refusing to permit
Elijah Wright to testify in behalf of appellant.

There is a conspiracy charged in the indictment to
murder the deceased ; but the record contains no evi-
dence whatever to sustain the charge. No witness
states any fact from which it can be inferred that, pre-
vious to the attack by the party of which the deceased
was a voluntary member, there was any concert between
appellant and Elijah Wright to take his life, either as
the means or end of an unlawful design. And there
being no evidence on the trial to support the charge of
conspiracy, appellant was entitled to the testimony of
Elijah Wright. And, for the same reason, evidence of
previous threats by the latter was incompetent in the
trial of appellant.

2. Instruction 4 is improper, because the court had no
right to direct attention to the interest of witnesses in
the result or character of statements made by them, the
jury being the sole judges of the weight of the evidence
and of the credibility of the witnesses.

3. By instruction 6, the jury were told, in substance,
that if appellant knew there was a warrant issued
against him and others, and that the deceased and
others were there for the purpose of arresting him, then
he had no right to use force to resist them, except to
protect himself or family from death or great bodily
harm, although the warrant was illegal. That instruc-

tion has no foundation of either fact or law to support it. The record in this case contains no evidence whatever that any warrant of arrest had been issued against appellant, or that he had committed any offense for which a warrant of arrest might issue, or that the party went to his house to arrest him. The evidence in regard to the warrant of arrest, meagre as it is, relates to Elijah Wright, and not to appellant at all.

By whom and how arrests may be made, are provided by the Criminal Code, the sections of which bearing on this case being as follows :

§ 36. A peace officer may make an arrest—

1. In obedience to a warrant of arrest delivered to him.

2. Without a warrant when a public offense is committed in his presence, or when he has reasonable grounds for believing that a person arrested has committed a felony.

§ 37. A private person may make an arrest, when he has reasonable grounds for believing that the person arrested has committed a felony.

§ 38. A magistrate or any judge may orally order a peace officer or private person to arrest any one committing a public offense in the magistrate's or judge's presence, which order shall authorize the arrest.

It will be perceived that the only cases in which any other person besides a sheriff, constable, coroner, jailer, marshal or policeman, who are by section 26 denominated peace officers, can make an arrest, is under section 37, where the person making it has reasonable grounds for believing the person arrested has committed a felony, or under section 38, where a magistrate or judge

orders the arrest of one at the time committing a public offense in the presence of the magistrate or judge. And not even a peace officer is authorized to make an arrest without a warrant issued and delivered to him, except when a public offense is committed in his presence, or when he has reasonable grounds to believe that the person arrested has committed a felony.

There is no evidence showing or tending to show that any of the party had reasonable grounds to believe that Elijah Wright had committed a felony, or even that their purpose was to arrest him for a felony; but the only offense for which they went to the house of appellant to arrest him, if such was their real object, was misdemeanor previously committed, if he had committed any offense.

It is then plain that no one of the party had authority to arrest either appellant or Elijah Wright, the justice of the peace having no right to make it himself, or to deputize Perdue to do so.

Section 39 provides that the person making an arrest shall inform the person about to be arrested of the intention to arrest him, of the offense charged against him for which he is to be arrested, and if acting under a warrant of arrest, shall give information thereof, and if required, shall show the warrant. An arrest made in substantial compliance with the terms of that section is a legal arrest, which no one can lawfully resist. But to make or attempt to make an arrest in disregard or violation of that section is an illegal act, which the person about to be arrested is not required to submit to. And if it had been even a peace officer armed with a warrant instead of the party of unauthorized persons,

appellant would have had the right to resist with all the force necessary to prevent the breaking and entering his dwelling-house at the time and in the manner it was done by the party of which the deceased was a member.

The deceased and those with him, therefore, not only had no authority to arrest either appellant or Elijah Wright, but the manner in which it was attempted constituted an assault upon appellant, which he and all the inmates of his house at the time, including Elijah Wright, had the right to resist with all the force necessary to prevent it, even to taking life. For, as has been said "the making an attack upon a dwelling, and especially at night, the law regards as equivalent to an assault upon a man's person, for a man's house is his castle." And it is well settled that when a case arises justifying the owner in resisting the breaking or forcible entrance of his dwelling-house, his servants or guests may arm themselves for the purpose of resistance. (See Wharton on Homicide, section 552, and authorities there cited.) It is true the rule is generally held not to be so extended as to excuse the killing of persons not actually breaking into a house, or in the act of breaking into it. But when, as in this case, the house is actually broken and entered by a portion of a party combined and armed for the unlawful purpose of depriving one of the inmates of his liberty, and carrying him away in the night time, accompanied with an attempt to commit a felony, as was done in this case, the person thus assaulted, as well as the owner of the dwelling, may resist with such force as may be necessary, even to taking the life of those present aiding and assisting, as well as those actually breaking and entering.

Commonwealth v. Wright.

Up to the time that the party fell back to the corn-crib, as the facts now appear, the killing of appellant or any inmate of his dwelling-house, would have been murder, while the killing of any member of the party by any inmate of the house would have been excusable homicide. And appellant was not required to remain in his house, nor to retreat from his house, but he had the right, outside or inside, to use such force as was necessary, or reasonably appeared to him to be necessary, even after the party fell back to the corn-crib, to prevent any further assault upon his person or his castle.

A mere demonstration, or even threat, to break a dwelling-house will not excuse a homicide by the owner or inmate. But when, as in this case, it had already been broken and fired into, and a felony attempted, appellant had the right to act according to surrounding circumstances as they appeared to him.

It was, therefore, improper for the court to omit from the instructions the qualification that appellant had the right to fire upon the deceased, or any other member of the party, if he believed from all the circumstances as they reasonably appeared to him, that the deceased or any member of the party was about to again forcibly enter his house, or to fire into it.

It was also improper to make appellant's right to shoot depend upon there being no other reasonably apparent means of escape. He was not required to flee from his dwelling, but had the right to stand his ground and use all the force necessary, or that reasonably appeared to him necessary, in or out of it, to prevent a forcible re-entrance or firing into it with the intent

mentioned. For it had been already broken, and an attempt had been made to commit a felony in it, and the party still remained in a menacing attitude, and were still firing at him and the house, as well as at Elijah Wright, who had been compelled to flee for his life. In fact, as this record stands, there had been no cessation of the original unlawful purpose of the party, or of the effort to carry it out.

Wherefore, the judgment is reversed, and cause remanded for a new trial and further proceedings consistent with this opinion.