CASE 54.—PROSECUTION AGAINST THOMAS LEACH FOR MURDER.—September 30.

# Leach v. Commonwealth

Appeal from Scott Circuit Court.

R. L. Stout, Circuit Judge.

Defendant convicted and appeals—Affirmed.

1. Homicide—Murder—Evidence—Sufficiency.—Evidence held to sustain a conviction of murder in the first degree.

2. Witnesses—Bias—Evidence.—In a murder trial, a witness could have been compelled to disclose the relations between herself and decedent, though improper, or they could have been shown by other witnesses if she was not questioned, or, if questioned, had denied improper relations, for the purpose of showing her bias or interest in the result of the trial so as to enable the jury to properly estimate the weight to be given her evidence.

3. Same.—Though a witness may not be required to answer a question that would subject him to prosecution, the fact that the answer may degrade, disgrace, or humiliate him will not excuse him.

4. Same.—Civil Code Prac., section 597, providing that a witness may not be impeached by evidence of particular wrongful acts, cannot be invoked to avoid disclosures touching his relations with one in whose behalf he testifies, though such disclosures may develop particular acts that may tend to degrade or disgrace the witness.

5. Criminal Law—Appeal—Insufficient Reservation of Ground for Review.—The trial court's action in refusing to permit witnesses to answer questions is not reviewable, unless the record shows what the testimony would have been.

6. Homicide—Appeal—Beneficial Error.—In a murder trial, error in submitting an issue as to accused's sanity in the absence of evidence to sustain the instruction being beneficial to accused, he cannot complain thereof on appeal.

7. Same—Right to Kill.—One has a right to kill a burglar or thief or one who is at the time committing a felony by attempting to break into his house, and, if necessary to protect himself or family from death or bodily harm, may shoot an assailant, but one has no legal or moral right to kill another merely because in the nighttime he comes upon his premises or knocks at his door.

8. Same—Burden of Proof.—An owner, controller, or occupant of premises who kills an intruder or trespasser cannot justify his conduct because the person killed was a burglar or thief and upon the premises for a purpose of committing a felony, or attacking with evil intent persons in possession of premises, in the absence of evidence tending to establish the defense.

9. Same—Evidence—Insufficiency.—Evidence in a murder trial held insufficient to require an instruction as to accused's right to shoot if he believed decedent was at the time attempting to break into his house or commit a felony.

BRADLEY & BRADLEY for appellant.

We think first that the defendant's case was prejudiced by the refusal to admit the testimony as to the relations between the Clark woman and Gayle. She was the chief witness against the accused, and it was of the utmost importance that all the points bearing on the improbability of her not telling the truth should be shown.

Second, we think that no testimony, or instructions as to insanity should have been admitted, as this confused the jury, and prejudiced the defendant, by placing him in a contradictory attitude, and also by making him to seem to rely on a defense entirely unsupported by any testimony, and lastly, again, we recall to you the fact that no instruction at all was given as to the right of the accused to defend his home.

Every man is entitled to have his whole case presented to the jury in the most favorable light that the law allows, and we ask that this honorable court order a reversal of this cause, that this accused may not be unlawfully deprived of his life or liberty.

All of which is respectfully submitted.

## AUTHORITIES.

Holly v. Commonwealth, 18 Ky. Law Rep., 441; Allen v. Commonwealth, 86 Ky., 642; Feltner v. Commonwealth, 23 Ky. Law

Leach v. Commonwealth.

Rep., 1110; Cyc., vol. 21, ┌ 828; McPherson v. State, 22 Ga., 478; Thompson v. State, 61 Neb., 210; Saylor v. State, 97 Ky., 184; Wright v. Commonwealth, 85 Ky., 123; Saylor v. Commonwealth, 17 Ky. Law Rep., 959; Sparks v. Commonwealth, 89 Ky., 644.

JAMES BREATHITT, Attorney General, and TOM B. Mc-GREGOR, Assistant Attorney General, for. Commonwealth.

The Commonwealth contends as follows:

1. That it was no reversible error to refuse to permit evidence to show the intimate relations of deceased with Becky Clark.

2. That it was proper under the evidence to give an instruction upon insanity.

3. That no reversible error was committed in giving the law of this case to the jury.

4. That appellant has had a fair and impartial trial and should be satisfied with the verdict against him.

We do not seriously take the contention of appellant that the court committed a reversible error in refusing to permit testimony to be introduced in showing the intimacy that may have existed between Becky Clark, the Commonwealth's witness, and the deceased; his only reason being to show the motive or interest of the witness, in so testifying against him.

In fact appellant introduced evidence to impeach the testimony of this witness, Becky Clark, and then sought to further introduce evidence of intimacy with the deceased. The record shows of their improper association. It was the province of the appellant to introduce any evidence he could find to impeach her, either by contradicting her, proving her general reputation for veracity, to discredit her, or by proving collateral and irrelevant facts. Appellant took this liberty and exercised it. And we contend that he exercised all the right given to him under the rules of admission of testimony.

AUTHORITIES CITED.

Robinson's Criminal Law, 1098; Franklin v. Commonwealth, 92 Ky., 612; Taylor v. Commonwealth, 13 Ky. Law Rep., 860; 18 Ky. Law Rep., 441; Pennington v. Commonwealth, 24 Ky. Law Rep., 321; Eversole v. Commonwealth, 17 Ky. Law Rep., 1259; Redmon v. Commonwealth, 21 Ky. Law Rep., 331; Pence v. Commonwealth, 21 Ky. Law Rep., 500; Benge v. Commonwealth, 24 Ky. Law Rep., 1466; Taylor v. Commonwealth, 17 Ky. Law Rep., 1214; Wharton, 3d ed., 794.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

Under an indictment charging him with the murder of C. W. Gayle, the appellant was convicted. The jury fixed his punishment at imprisonment for life in the State penitentiary. From a judgment entered on the verdict, he prosecutes this appeal.

The deceased and appellant were close neighbors; the houses they respectively lived in not being over 100 yards apart. There are many facts testified to showing that they were good friends, and a few hours before the killing they were together engaged in social conversation and arranging or settling some business matters between them. Yet, notwithstanding the outward and general appearance of friendliness and good feeling for Gayle on the part of appellant, there is evidence that to various persons at different times within a few weeks before he killed Gayle he made threatening remarks concerning him. To one person he said, in speaking of Gayle in connection with a woman named Rebecca Clark, who was visiting at his (appellant's) house, that, "if Gayle ever put his foot on his premises while she was there, he would kill him." To another, in speaking of trouble he had with Gayle about some flour, he said: "Those Gayles are going to keep a fooling with me until I kill some of them." To yet another he said, in talking about Gayle's hog getting into his garden, that, "if the hog got back in the garden, he intended to kill the hog, and, if Gayle said anything about it, he would kill him." And to others he made remarks of a less threatening nature about deceased tending to show a hostile feeling. The homicide occurred on Monday about mid-

night. On the Saturday previous the Clark woman went to Leach's house to visit her son, who had been there since the May previous, and she remained until after Gayle was shot, and was in the house with her son, Leach, and his wife when the shooting was done. About 10 o'clock on Monday night Leach said to John L. Butler, as he, Leach, and the deceased and his brother Bob Gayle were on their way home from Butler's store, where Leach and the Gayles had been transacting some business: "You tell Gayle that he has got to take that woman away from here right now." This message Butler at once delivered to Gayle. Mrs. Clark testified that, when Leach returned to his house from Butler's store, Gayle came with him, and said to her in the presence of Leach that he had come to take her away, and would be back after her in 15 or 20 minutes or as soon as he could hitch up his buggy; that then Gayle left, and in a short time came to the front door and knocked, when Leach said, "Who is there?" three separate times, and Gayle to each request replied: "Tom, it is 'Dutch' [Gayle's nickname]. Open the door." While this conversation between Leach and Gayle was going on, the witness testifies that Mrs. Leach and herself said to Leach, who had his gun in his hand, "Don't shoot; it is 'Dutch.'" But not withstanding this warning and information, he fired through the door, which was closed, the shot taking effect in the body of Gayle, who was standing immediately outside on the porch. Leach's version of the affair is: That Monday afternoon Gayle took Mrs. Clark out buggy riding, and that night, on their return from Butler's store, Gayle, who was drinking, came to his house and said, "I am going to take this woman away," when he replied, "It would not do to take her away at night." To this

Gayle answered, "All right," and then left, saying that he would see him in the morning. That Gayle did not with his knowledge or consent come to his house again that night. That during the night some person walked upon the front porch and scratched on the door, when the dog growled, and he heard the person say, "I'll shoot your brains out if you bite me." That he then asked three times who it was, and, not receiving any reply, fired, but did not know that it was Gayle he had shot until after he fired. Leach further testified that he had about $40 in his house, and that the night preceding the killing of Gayle a person unknown to him put paper in the door locks so as to prevent it from locking, and he felt some uneasiness about his money. From this brief history of the case it appears that there was ample evidence from which the jury might well conclude that Leach deliberately, wilfully, and without excuse or provocation shot and killed deceased. It remains to be seen whether or not the trial court committed any prejudicial errors of law.

Three alleged errors are relied on by his counsel: First, the failure of the trial court to permit witnesses to testify as to the relations that existed between the deceased and the Clark woman; second, in giving to the jury an instruction upon the subject of the insanity of the appellant; and, third, in failing to properly instruct the jury as to the right of Leach to shoot if he believed the person he shot was at the time attempting to break into his house or commit a felony.

Rebecca Clark, who was the chief witness for the Commonwealth, was not inquired of concerning her immoral intimacy with the deceased, but Bassitt and other witnesses introduced in behalf of the accused were asked if they knew what the relations between

Mrs. Clark and Gayle were. The court refused to permit the witnesses to answer this question. What answer the witnesses would have made the record does not disclose, as no avowal was made. It would have been competent to have inquired of Mrs. Clark what the relations had been between herself and the deceased, and she might have been required by the court to disclose them, although improper; and this fact might have been shown independent of her by other witnesses if she was not questioned on the subject, or, if questioned, had denied the immoral relations. Morrison v. Commonwealth, 74 S. W. 277, 24 Ky. Law Rep. 2423. It is proper to permit, and, if necessary, to require, a witness to relate his or her relations with the parties to the litigation, and in Commonwealth cases, with the accused or the prosecuting witness, or the deceased if the prosecution is for homicide, for the purpose of showing his bias or prejudice or interest in the result of the trial, so as to enable the jury to place a proper estimate upon the weight that should be given to his evidence. We do not mean to be understood as declaring that a witness may be required to answer a question that would subject him to a criminal or penal prosecution, but the fact that the answer may degrade, disgrace, or humiliate a witness will not excuse him. Underhill on Criminal Evidence, section 248; Greenleaf on Evidence, section 450. This rule does not conflict with section 597 of the Civil Code of Practice, providing, among other things, that a witness may not be impeached by evidence of particular wrongful acts. Commonwealth v. Welch, 111 Ky. 530, 63 S. W. 984, 23 Ky. Law Rep. 151; Britton v. Commonwealth, 96 S. W. 556, 29 Ky. Law Rep. 857. Under the Code, as construed in these and many other cases, a party can-

not impeach the testimony of a witness by evidence of specific acts, with the exception mentioned in the section, supra.   To ask a witness questions for the purpose of impeaching his credibility or morality is one thing, and to make inquiries that will show his interest, bias, or prejudice is another, although in some respects the end sought to be accomplished by each line of interrogation is the same.   The impeachment of a witness is confined to his own life and character, without respect to his interest in the case or his relations to the parties to the controversy.   The attack is made upon the witness as an individual independent of his interest or bias or prejudice in the case upon trial.   On the other hand, the reputation of the witness for truthfulness or morality is not necessarily involved in inquiries made for the purpose of showing his feelings of kindness or hostility towards the parties or his social or family or business or other relations with them, although in instances like the matter we are considering inquiries along this line would reflect upon the character of the witness.   But the purpose of the examination is not particularly to discredit the reputation of the witness for truth or morality as it is when he is sought to be impeached; and the rule that protects a witness attempted to be impeached from investigation into specific or particular acts in his life cannot be invoked to save him from disclosures touching his relations with the party in whose behalf he is testifying, although such disclosures may develop particular acts that have a tendency to degrade or disgrace the witness.   As the record fails to show what answer Bassitt and other witnesses would have made to the question, the assigned error in declining to permit them to answer the question cannot be considered by this court.

Nichols v. Commonwealth, 11 Bush, 575; L. C. & L. R. R. Co. v. Sullivan, 81 Ky. 624, 5 Ky. Law Rep. 722, 50 Am. Rep. 186. It may be remarked, however, that other evidence reasonably sufficient to convince the jury that immoral relations did exist between the Clark woman and the deceased was heard by the jury from other witnesses, so that the accused had before the jury substantially the same evidence that his counsel in their brief say would have been made by Bassitt and others.

Several witnesses were introduced by appellant who said that for a number of years he had been subject at intervals to epileptic fits, and that while under the influence of this disease he was prostrated mentally and physically but when he recovered from the effects of the disorder, which only continued for a few hours, he was not legally incompetent to form a criminal intent or commit a crime. But, as no evidence was introduced affecting the mental capacity of the accused at the time he killed Gayle, his counsel argue that the evidence relating to epileptic fits was offered only to show his weak condition generally, and not for the purpose of resting upon it an instruction upon the subject of insanity; and the complaint is made that the court erred to the prejudice of appellant in giving to the jury an insanity instruction. It may be conceded that the evidence introduced in behalf of appellant did not authorize the court to submit to the jury an instruction upon the subject of his mental soundness at the time of the homicide, but we are unable to perceive in what respect the giving of this instruction could have been prejudicial to the accused. It gave to him the benefit of an instruction he was not entitled to, under which the jury might have acquitted

him. The error of the court was prejudicial to the Commonwealth, rather than the accused.

It is insisted that none of the instructions given to the jury presented the defense of appellant. His counsel contend that, as he believed at the time he fired the fatal shot that the person at whom it was fired was attempting to enter his house, he had the right to shoot to prevent such entry. A man has a right to kill a burglar or thief who is at the time committing a felony by attempting to break into his house. And so he may, if necessary to protect himself or family from death or bodily harm, shoot an assailant. But a person has no legal or moral right to kill another merely because in the nighttime he comes upon his premises or even knocks on the door of his house. The owner, controller, or occupant of premises who in the night or day time shoots and kills an intruder or trespasser cannot excuse or justify his conduct upon the ground that the person killed was a burglar or thief and upon the premises for the purpose of committing a felony, or attacking with evil intent the person in possession of the premises, in the absence of some evidence conducing to establish this defense. Kentucky Criminal Law & Procedure, by Roberson, sections 155-157; Bishop's New Criminal Law, section 858; Chapman v. Commonwealth, 15 S. W. 50, 12 Ky. Law Rep. 704; Utterback v. Commonwealth, 105 Ky. 723, 20 Ky. Law Rep. 1515, 49 S. W. 479, 88 Am. St. Rep. 328; Baker v. Commonwealth, 93 Ky. 302, 19 S. W. 975, 14 Ky. Law Rep. 183; Saylor v. Commonwealth, 97 Ky. 184, 30 S. W. 390, 17 Ky. Law Rep. 100; Wright v. Commonwealth, 85 Ky. 123, 2 S. W. 904; Sparks v. Commonwealth, 89 Ky. 644, 20 S. W. 167, 12 Ky. Law Rep. 402. If there was any evidence that Gayle at the time he was

shot was forcibly and wrongfully attempting to enter or break into the house of Leach, or any evidence that Leach believed or had reasonable grounds to believe that the person on his porch was a burglar in the act of entering into his house, the court should have instructed the jury upon the law applicable to this state of facts. So that the question narrows down to the proposition whether or not the evidence of Leach was sufficient to warrant the court in giving an instruction that, if the jury believed from the evidence that Leach believed and had reasonable grounds to believe that some one was trying to break into his house to commit a felony, he had the right to take the life of the intruder, if necessary, or believed by him in the exercise of a reasonable judgment to be necessary, to prevent him from committing the contemplated crime. A careful consideration of Leach's evidence convinces us that it did not authorize an instruction upon this branch of the law. Leach did not testify that he believed or had any grounds to believe that the person on his front porch was a burglar or had come to his house for the purpose of doing him or any of his family any injury, or for the purpose of committing any offense against his property. Hence there was no evidence to warrant the court in giving the instruction counsel insist their client was entitled to. Indeed it is very questionable if, under the evidence, the appellant was entitled to the instruction given by the court, or to any instruction that would authorize the jury to find him not guilty upon the ground that the shooting was either excusable or justifiable.

After a careful consideration of the entire record and the well-prepared argument of his counsel, we

find no error that would authorize us in granting a new trial.

The judgment of the lower court must be affirmed.