### Steele v. Commonwealth.

(Decided June 24, 1921.)

Appeal from Whitley Circuit Court.

1. Criminal Law—Right of One to Kill Burglar.—A person may be justified in killing a burglar or thief who is at the time commit-

ting a felony by attempting to break into his home, but a person has not the right to kill another merely because in the night he comes upon the premises or even knocks at the door of his house.

2. Criminal Law—Killing Intruder—Evidence.—To excuse or justify the killing of an intruder or trespasser on the ground that the person killed was on the premises for the purpose of committing a felony or attacking with evil intent the person in possession, the latter must introduce some evidence conducing to the establishment of this defense.

3. Criminal Law—Appeal and Error.—A judgment of conviction will not be interfered with upon appeal unless the verdict is so palpably against the weight of the evidence as to make it appear at first blush that the jury was influenced by passion or prejudice.

4. Criminal Law—Evidence of Other Crimes.—Subject to certain exceptions evidence which in any manner shows or tends to show that accused has committed other crimes wholly independent of that for which he is being tried, is irrelevant and inadmissible.

5. Criminal Law—Impeachment.—The evidence of bad character at a time long anterior to the date of trial should not be admitted until a basis is laid by proof tending to show that the character as of the date the testimony is given is then bad.

6. Criminal Law—Impeachment.—Where there is an objection or a motion to limit the effect of evidence pertaining to the reputation of defendant, the court should admonish the jury that such evidence is admitted for the sole purpose of testing the accuracy and credibility of the witness and not as substantive evidence of defendant's guilt of the offense charged.

7 Criminal Law—Defense of One's Home and Family.—Where accused had reasonable grounds to believe and did believe he was in danger of death or great bodily harm at the hands of any member of an attacking party he had the right to use such force as reasonably appeared to him to be necessary to prevent any attempted entry into his house, or threatened death or bodily danger by any member of the party.

STEPHENS & STEELEY and H. G. WILLIS for appellant.

CHAS. I. DAWSON, Attorney General, JOS. B. SNYDER and R. L. POPE for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

It was the night before Christmas, 1906, that marked the tragedy giving rise to the present prosecution, and in which appellant took the leading role. The scene was staged at a barber shop in Corbin. The setting as depicted by counsel for appellant may be thus summarized:

Having closed his shop for the night and just after he got outside, appellant met two men who asked to go

into the shop to get warm. About the same time three little girls, thinly clad and shivering, chanced that way and asked permission to go inside for a like purpose. Appellant, unable to resist their appeals, unlocked the door and all went in. In order not to encourage them to stay too long he did not light the lamp. Their season of quietude and comfort was of short duration; the stillness of some ten minutes was interrupted by a violent attack from the rear and in front of the shop. Appellant's nerves were not of steel; he became frightened, took a pistol out of the drawer and walked to the front window. About this time the glass was broken in; he thought he heard someone say: "If powder will burn I will blow or burn you up." He fired a shot, dashed out of the door and ran away. He had no motive other than saving himself from what he believed imminent danger of injury or death. After wandering in many states for about fourteen years he surrendered to an officer in Los Angeles and returned to this state to stand trial. He left the county to save a sick father the strain of knowing his son had been arrested and must be tried for murder.

It is the theory of the Commonwealth that Alonzo and Bob Bledsoe, brothers, in company with the Brummitt brothers (Sam and John), had been celebrating Christmas and two of them were burned with fireworks. One Pleas Setzer was thought by some to possess the power of being able to blow 'thresh'' out of children's mouths, and the two injured in the battle of Roman candles reasoned that if Pleas could thus cure "thresh" he could blow the fire from their wounds. This party was in quest of "Doctor" Setzer and upon inquiry at a house of ill-fame they were informed he was at the barber shop. When they reached the shop they knocked for admittance, a gentle knock we are told. Alonzo Bledsoe placed his hands on the lower part of the window and said, "Pleas, let me in." At this instant, appellant, without having spoken a word, punched his pistol through the window glass and fired. The ball struck Alonzo Bledsoe in the shoulder and lodged near the heart, from the effects of which wounds he died the following day.

Appellant was convicted of voluntary manslaughter and sentenced to an imprisonment for five years.

The insufficiency of the evidence to support the verdict is the first point urged for reversal.

Neither expedition was engaged in a laudable mission. The quartette (Bledsoes and Brummitts) had doubtless engaged in rather a dangerous and violent celebration firing at each other; they had spent some time at the Frazier house of ill-repute; whiskey was in evidence there. Between Fraziers and the shop they engaged in childish pranks; they played leap frog, and two of them got the wheels of an old wagon from a nearby blacksmith shop, the running of these against the rear of the building accounted for some of the noise.

Because Setzer had never seen his father, the latter having died before the birth of his son, rumor had it, he could blow "thresh" from children's mouths. Many mothers brought their afflicted children to him for this purpose, but he was not impressed with the ability to accomplish the results attributed to him, he was not aware of this reputed power, nor did he have much confidence in the success of his efforts. Seeking the fire blower was more an excuse than the reason for the visit to the shop. The alleged burns did not prevent a sojourn of the quartette at Fraziers, nor interfere with their frolic between that point and the shop. While the knock on the door for admittance was probably not an ordinary one nor the call to Pleas made in a moderate tone as stated by one of the witnesses, we cannot as a matter of law say the situation was such as warranted the precipitate action of appellant.

We are not impressed with the eleemosynary propensities of appellant in affording warmth and shelter to the thinly clad, shivering trio. They were youthful habitues of the underworld, entertained in a dark room behind locked doors. They were inmates of the Frazier house, which was located just a short distance from the barber shop, and had they been in search merely of warmth, the most natural thing for them to have done would have been to go to their abiding place. They had not been out in the weather for any length of time, besides had the temperature been of such severity as to impel them to stop for warmth so near their headquarters it is hardly probable the quartette would have been disposed to play on the way as long as they did. It was a moonlight night and the sextet from within could see those on the outside. None of the latter was armed. Before any of those inside could open the door the pistol was fired. While a mere demonstration or

even threat to break into a house will not excuse a homicide by the occupant, Wright v. Commonwealth, 85 Ky. 123, 2 S. W. 904, a man is justified in killing a burglar or thief who is at the time committing a felony by attempting to break into his house. But a person has not the moral or legal right to kill another merely because, in the night, he comes upon his premises or even knocks at the door of his home. The trigger of a pistol may be pulled in the fraction of a second, but the soul of the victim never returns. The taking of one's life is a serious matter and the occupant of premises who shoots or kills an intruder or trespasser, to excuse or justify his conduct on the ground that the person killed was on the premises for the purpose of committing a felony or attacking with evil intent the person in possession, must introduce some evidence conducing to the establishment of this defense. Leach v. Commonwealth, 129 Ky. 497, 112 S. W. 495.

A judgment of conviction will not be interfered with upon appeal unless the verdict is palpably against the weight of the evidence. Utterback v. Commonwealth, 190 Ky. 138, 226 S. W. 1065; Banks v. Same, 190 Ky. 330, 227 S. W. 455; Finney, &c. v. Same, 190 Ky. 536, 227 S. W. 999; Fleming v. Same, 190 Ky. 810, 228 S. W. 407.

As to what occurred at the barber shop immediately preceding the killing the evidence is conflicting and especially is this the case in regard to the simultaneousness of the breaking of the window glass and the shot. It is for the jury to determine the facts when the evidence and circumstances are contradictory and where, as here, there is proof supporting the verdict, so that it cannot be said the judgment is flagrantly against the weight of the evidence, no reversal is authorized.

It is next said a reversal should be ordered because of the misconduct of counsel for the Commonwealth in asking certain incompetent and prejudicial questions relating to other alleged offenses, five in number, committed by accused other than the charge upon which he was being tried. As succinctly stated by counsel:

"The jury had before them what amounted to evidence in their minds that appellant had killed a man; that he ran away because he knew he was guilty; that he had been indicted for adultery with one of the Frazier women, and for having committed a common nuisance

with another; that he furnished the Frazier women a house in which to ply their immoral trade; that he left his first wife and married another woman without a divorce; that he abused his second wife and was arrested for it and brought into court, and last of taking his wife's bed clothing and making a harlot's bed of them.''

The court sustained the objection to some of the questions and overruled the others, but before submitting the case to the jury they were admonished not to consider the evidence, (a) as to bigamous marriage, and (b) the trouble with accused's second wife. It is urged that the admonition was not sufficient to overcome the prejudicial effect of the incompetent testimony.

As said in Thomas v. Commonwealth, 185 Ky. 226, 214 S. W. 929:

''The general rule is that on the prosecution of a particular crime, evidence which in any manner shows or tends to show that accused has committed another crime, wholly independent of that for which accused is being tried, is irrelevant and inadmissible. There are several well recognized exceptions to the rule, however, and these exceptions are founded on as much wisdom and justice as the rule itself. The general rule does not apply where the evidence of another crime tends directly to prove defendant's guilt of the crime charged. Evidence of other crimes is admissible to prove particular matters such as the identity of accused, also the motive, intention, or knowledge. Such evidence is likewise admissible when two or more crimes are so linked together in point of time or circumstances that one can not be fully shown without proving the other.''

When accused has been tried for one offense he is subject to conviction, if at all, by evidence showing he is guilty of that offense alone. The soundness of this rule will hardly be questioned. If it was permissible to prove that defendant was guilty of crimes in no way connected with the one for which he was being tried, conviction would be had upon a particular charge by combining the evidence of it with the evidence of other crimes, when perhaps the evidence of the particular charge would be insufficient to secure a conviction. It is easier to believe one guilty of a crime when proof is made that he has committed another crime or offense, when, as a matter of fact, the guilt of one offense is not proof that accused is guilty of another. Such proof has

the tendency to prejudice the minds of the jurors against the accused and to predispose them to a belief in his guilt when technically it does not have that effect. The proof of a distinct offense from the one under trial is not permissible except under circumstances such as are referred to in Thomas v. Commonwealth, *supra.* See also Brashear v. Commonwealth, 178 Ky. 491, 199 S. W. 21, for a full statement of the rule.

Measured by the foregoing principles we find that the offenses about which accused was interrogated, and to which objection was made were entirely disconnected and distinct from the crime for which he was being tried. They show no motive for the commission of the crime charged; they were not committed for the purpose of enabling accused to commit the offense under trial or to enable him to conceal it, therefore any evidence as to these offenses was improperly admitted. It is said that any prejudicial effect arising from the admission of such testimony was removed by the court's admonition to the jury at the close of all the evidence not to consider it, but since a new trial will be ordered for other reasons, and the attorney representing the Commonwealth will be careful not to interrogate accused along these lines upon a retrial, we deem it unnecessary to discuss the effect of this testimony.

Several witnesses testified that the reputation of Maggie Lawson and Nannie Frazier was bad. Some of this testimony was introduced before these witnesses were put on the stand. At the conclusion of the evidence defendant moved the court to exclude all testimony as to the reputation and moral character of these witnesses fourteen years prior to the day of trial, and when this motion was overruled counsel moved the court to admonish the jury that they should not consider the testimony for any purpose except in so far as it affected the credibility of said witnesses. This motion was likewise overruled.

In order to impeach a witness the evidence of bad character should be directed to the time of trial, and to this end, under proper circumstances, evidence of previous bad character is competent. While evidence of bad character at a time previous may tend to show the character of the witness at the present time it should be admitted with caution. The evidence of bad character at a time, long anterior to the day of trial should not be

admitted until a basis is laid by other proof tending. to show that the character is then bad. Mitchell v. Commonwealth, 78 Ky. 219.

The reason for this rule is thus aptly stated in Turner's Guardian v. King, 98 Ky. 253, 32 S. W. 941:

"Is it to be said that the vices and immoralities of youth are to follow the witness as long as he or she may live, or should it not be confined to a period so near the time at which the testimony is offered to impeach the character of the witness as would induce the rational belief that such bad reputation for morals still exists? Is the mother's character for truth to be lessened or destroyed because witnesses say that sixteen years before they are called to testify she was regarded as an unchaste woman, a period almost as remote from the time of this trial as the birth of the testator, her son, whose right to make a will is now involved? We think not. What is the general moral character of the witness, is the question to be propounded, and the answer that she was unchaste sixteen years ago is not responsive to the question and should have been excluded from the jury."

To same effect is Smith v. Commonwealth, 140 Ky. 599, 131 S. W. 499.

Where, for example, there is competent evidence of defendant's good reputation, inquiry may be made of the witnesses on cross-examination of rumors or reports of particular acts of misconduct on the part of defendant, not for the purpose of proving such facts but for the sole purpose of testing the accuracy and credibility of the witness, and where there is an objection to such evidence or a motion to limit its effect the court should admonish the jury that it is admitted for the sole purpose of testing the accuracy and credibility of the witness and not as substantive evidence of the defendant's guilt of the offense charged. Because otherwise the jury in a doubtful case might convict the defendant upon evidence of other offenses not necessary to identify the accused, or to show guilty knowledge, a criminal intent or motive, or a system of criminal action. Copley v. Commonwealth, 184 Ky. 185, 211 S. W. 558.

However such evidence will not authorize a reversal unless it appears from the whole record that defendant's substantial rights were thereby prejudiced. Turner v. Commonwealth, 185 Ky. 382, 215 S. W. 76; Hill v. Commonwealth, 191 Ky. 477, 230 S. W. —. Here the attack

was not upon accused but upon his witnesses, and in so far as evidence of their bad character long prior to the trial was admitted without proof of the continuation of such reputation, or such as to show it was then bad, *i. e.*, at about the time of trial, the court clearly erred.

Instructions Nos. 4 and 5 are complained of. It is urged they did not sufficiently cover the law of the case in that they only authorized appellant to shoot and kill Bledsoe if he had reasonable grounds to believe he was in danger of bodily harm, at the hands of Bledsoe alone; that the instruction should have justified such shooting in order to avert danger at the hands of any of the party jointly engaged in the alleged attack on the house. The point is well taken, because if accused had reasonable grounds to believe and did believe he was in imminent danger of death or great bodily harm at the hands of any member of the attacking party he had the right to use such force as reasonably appeared to him to be necessary to prevent any attempted entry into the house or of threatened death or bodily danger.

Upon the next trial the court will modify instructions Nos. 4 and 5, so they will read as follows:

IV. If you believe from the evidence that at the time the defendant, William P. Steele, shot and killed Alonzo Bledsoe, if he did so do, he believed and had reasonable grounds to believe that he was then and there in immediate danger of death or the infliction of some great bodily harm at the hands of Bledsoe, or others acting in concert with him and that it was necessary or was believed by the defendant in the exercise of a reasonable judgment to be necessary to so shoot and kill the deceased in order to avert that danger, real or to the defendant apparent, then you ought to acquit the defendant upon the ground of self-defense or apparent necessity therefor.

V. If you believe from the evidence that the defendant, William P. Steele, at the time of the killing, was in his own house, or in a house of which he had control, and that he had reasonable grounds to believe and did believe that Alonzo Bledsoe or others acting with him was then and there attempting to forcibly enter said house with the purpose of doing said Steele or any of those in the house great bodily harm, or with the intention of committing a felony then said Steele had the right to use such force as was necessary, or reasonably

appeared to said Steele to be necessary, to prevent such entry and avert such impending danger, real or apparent, or contemplated crime even to the taking of the life of said Bledsoe, and if deceased was shot and killed by the defendant under the state of case set out above you will find defendant not guilty.

For the reasons given the judgment will be reversed for further proceedings consistent herewith.