## Carroll v. Commonwealth.

(Decided October 28, 1927.)

### Appeal from Harlan Circuit Court.

1. Homicide.—While owner has no right to kill another for merely trespassing on his premises, he may do so in order to prevent an unlawful forcible entry into his dwelling, if it appears to him in the exercise of a reasonable discretion that it is necessary to do so.

2. Homicide.—Evidence as to whether defendant, charged with murder, was justified in killing deceased in order to prevent his forcible entry into her dwelling, held for jury.

3. Homicide.—Instruction, in prosecution for murder, on defendant's right to commit homicide in defense of home, which confined right to personal defense of self and inmates, held erroneous, because failing to incorporate right to defend home against unlawful forcible breaking and entering; this latter right being on the same plane as right to defend one's person.

FORESTER & CARTER for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant, Vina Carroll, and her husband, John Carroll, with two small children, lived in the town of Kitts, which is a suburb of the city of Harlan, in Harlan county. The husband worked away from home, and was not there from Monday morning until the end of the week. On the night of December 3, 1926, appellant, Robert Murr, Virginia Hatfield Murphy, and Pearl Bryant were in the Carroll home. The latter two retired in the front room, appellant in the first room back of it, and Murr in the third room in the rear of the house. At about 11:30 on that night two men appeared upon the front porch, one of whom was the deceased, Frank Lankford, and the other one was Bill Thomas. The deceased knocked upon and shook the door and demanded entrance, and one of the witnesses sleeping in the front room said that he called out, "Vina, let me in," or its substance. One of the witnesses sleeping in the same room inquired who it was and was informed that it was the deceased. While that was going on the appellant, according to the testimony, had not yet awakened, but the noise made on the door, with the talking between deceased and the two occupants of the front room, did finally awaken her, and she at once seized a shotgun that was conveniently located and took her position in the door leading from her room into the front room. She then informed the would-be intruder that she did not desire his entrance and would not let him in and demanded, in substance, that he go away and desist from his attempt at forcible entrance. Instead of complying with her request, deceased threatened to shoot into the house and then forcibly broke down the door, and, as he was stepping into the room appellant shot him with the gun she had obtained, and from which he afterwards died.

Appellant then made arrangements with a neighbor to take care of her children and went in an automobile about seven miles where her husband was working and later returned and surrendered herself to the officers. All of the occupants of the house, except Pearl Bryant, were jointly indicted by the grand jury of Harlan county upon a charge of murder, and upon the trial thereof in the same court appellant's codefendants were acquitted, under an instruction so directing. Appellant's guilt was submitted to the jury and it found her guilty of voluntary manslaughter, with an attached punishment of con-

finement in the penitentiary for two years, and from the judgment pronounced on that verdict after her motion for a new trial was overruled, she prosecutes this appeal, upon the grounds: (1) That under the evidence she was also entitled to a verdict directing her acquittal and for which she asked, but, if not so, then the verdict is flagrantly against the evidence, and (2) erroneous instructions given to the jury by the court.

1. In addition to the facts as so briefly stated above, it appears from the record that the reputation for morality of appellant and Virginia Hatfield Murphy was bad, and it is not difficult to infer that the atmosphere at the Carroll home was somewhat tainted morally, but there was no direct proof of undue intimacy between appellant and deceased, or between her and any other man. Between 2 and 3 o'clock in the afternoon preceding the homicide deceased was at the Carroll home for a short while and was drinking to some extent. He and Mrs. Carroll and the other occupants of the Carroll home were together later in the afternoon, and at about 6 o'clock appellant and the Murphy woman took supper at a restaurant, and deceased was present, but ate nothing. However, he paid for the supper of the two women, and in a little while they separated, and nothing more was heard from him until he appeared at the door of the Carroll home on the occasion of the homicide. Two brothers named Pemberton testified for the commonwealth in substance, that, immediately following the supper at the restaurant, and, perhops, while deceased was paying for it, they were in conversation with appellant, during which she invited them to a party which she said she was going to give, and that in the conversation she stated, in substance, that Frank Lankford had some money and that she was going to kill him and get it. The cross-examination of those two witnesses developed many contradictions, and also proved the fact that the father of deceased had advanced money to pay judgment that had been rendered against the witnesses on convictions for misdemeanors. It was also shown that the father of the deceased was paying the expenses of the witnesses at trial and had done so when they appeared before the grand jury. Furthermore, it was shown that one of those witnesses had been sent to the House of Reform for committing what would have been a felony had he been of sufficient age, while the other one had served a term in the penitentiary. Their testimony was exceed-

ingly incredible, and we are strongly impressed that it was an entire fabrication.

But, be that as it may, all the direct testimony in the case shows that the homicide was committed under circumstances contradicting any such alleged purpose on the part of appellant, and that the motive for the future crime contained in such alleged threats formed no part of the inducement for the homicide when it was actually committed by her, since there was no contradiction in the proof of the way and manner that it occurred as above outlined. It is the contention of counsel for appellant that, under the facts immediately attending the homicide, as so proven, she had the right to shoot and kill deceased in defense of her home, as well as in defense of its inmates, including herself, and for that reason the peremptory instruction which she asked should have been given; but, if incorrect in that position, then the verdict is flagrantly against the evidence, which, in effect, found that she feloniously killed the deceased in sudden heat and passion.

Much has been written concerning the right of one in defending his home from the forcible and unlawful entrance of others. The old maxim was that one's home was his castle, and he had the right to defend it against wrongful intrusion by others. As a general statement that is true, the law regarding that right on a par with defending one's person from death or great bodily harm at the hands of another. In the case of Wright v. Commonwealth, 85 Ky. 123, 2 S. W. 904, the deceased was killed in an effort to make a second forcible entry into the residence of the defendant on the pretense of effecting an arrest therein, but which was attempted without authority of law. The broad principle of law was therein laid down that:

> "The making an attack upon a dwelling, and especially at night, the law regards as equivalent to an assault upon a man's person, for a man's house is his castle."

But the rule was therein qualified by the opinion saying: "It is true the rule is generally held not to be extended as to excuse the killing of persons not actually breaking into a house, or in the act of breaking into it," and that in no event was the owner justified in using any more force than was necessary to prevent the assault upon and felonious entry into his dwelling, but that he

had the right to use such force as appeared to him in the exercise of a reasonable discretion to protect his home from such forcible and unlawful entries. It was furthermore held, in that part of the opinion discussing the instructions, that:

"It was therefore improper for the court to omit from the instructions the qualification that appellant had the right to fire upon the deceased, or any other member of the party, if he believed, from all the circumstances as they reasonably appeared to him, that the deceased or any member of the party was about to again forcibly enter his house, or to fire into it."

The same general doctrine was also approved in the cases of Leach v. Commonwealth, 129 Ky. 497, 112 S. W. 595, and Newcome v. Russell, 133 Ky. 29, 117 S. W. 305, 22 L. R. A. (N. S.) 724. In the latter case, and in those of Saylor v. Commonwealth, 97 Ky. 184, 30 S. W. 390, 17 Ky. Law Rep. 100, Commonwealth v. Bullock, 67 S. W. 992, 24 Ky. Law Rep. 78, McKinney v. Commonwealth, 82 S. W. 263, 26 Ky. Law Rep. 565, and Steele v. Commonwealth, 192 Ky. 223, 232 S. W. 646, the same doctrine as to the rights of the owner of a dwelling to protect it under specified circumstances was recognized. However, a distinction was pointed out in all of them between the right of an owner to protect his *premises* from a mere *trespass* by another, and his right to protect his *dwelling* from an assault with the intent to forcibly enter it for an unlawful purpose. No one has the right to kill another for merely trespassing upon his premises, but the right to kill to prevent an unlawful forcible entrance into one's dwelling, if it appeared to the owner in the exercise of a reasonable discretion that it was necessary to do so (just as he might kill one in the exercise of his right to defend his person) is universally recognized as a correct principle of law.

Whether the appellant in this case transgressed her rights in the defense of her home was a question for the jury under a proper instruction based upon all the facts and circumstances proven in the case, and we are not prepared to say that there were not enough circumstances to submit that issue, although a verdict finding that she exceeded her rights in the premises, as they appeared to her, might be flagrantly against the evidence; a question upon which we do not now express an opinion. We

therefore conclude that the court did not err in refusing her motion for a peremptory instruction.

2. Instruction No. 6 attempted to define defendant's right in defense of her home, but when analyzed it appeared to confine them to the personal defense of herself and the inmates of her house from death or bodily harm at the hands of the deceased, when her right to defend her home against the forcible and unlawful breaking and entering into it by deceased should have been incorporated in the instruction along with her right to defend herself and the inmates of her house against personal danger at the hands of the deceased. Of course, we do not mean to say, nor do the cases, *supra,* hold, that a mere effort at effecting entrance into one's dwelling would ipso facto justify the owner in killing him, and, of course, no such right exists, as against a mere trespasser on his or her premises, and which was no part of the dwelling. A different case, however, is presented when not only an attempt at entrance into the dwelling itself is made, but it is effected over the protest of the owner, and the cases, supra, and authorities referred to in those opinions, place the right of the defense of the dwelling upon as comprehensive plane as the defense of one's person, and the instruction in this case should have clearly so stated.

Wherefore the judgment is reversed, with directions to grant the new trial and for proceedings consistent with this opinion.