## Williams v. Commonwealth.

(Decided March 8, 1929.)

R. L. POPE for appellant.

J. W. CAMMACK, Attorney General, and GEO. H. MITCHELL, Assistant Attorney General, for appellee.

Opinion of the Court by Chief Justice McCandless —Reversing.

Carl Williams, Oscar Overton, and Franklin Mason were indicted for the murder of Gilbert Brock; there being a conspiracy charge in the indictment. In a separate trial, Carl Williams was found guilty of manslaughter and sentenced to three years in the penitentiary. He appeals.

The homicide occurred at the home of Charles Meeler, in the mining camp of Mary Helen in Harlan county, about 7 o'clock on the evening of February 5, 1927. On that evening several neighbors, including Oscar Overton and his wife, gathered at the Meeler home. At some time between 6 and 7 o'clock, the deceased Gilbert Brock, Lee Chitwood, Ed Hembree, and Gilbert Delph

arrived at the Meeler home. The last three are the only prosecuting witnesses and will hereafter be called the "prosecuting witnesses." They say they came at the invitation of Overton, a matter which he denies. The company was lively. A jar of home-brew was upon the kitchen table, and it is admitted that the deceased and each of the prosecuting witnesses took as many as two drinks therefrom. The ownership of the brew is in dispute. The three prosecuting witnesses say it belonged to Overton. This is denied by him and practically all the others present. These self-invited guests, according to the others, were singing boisterously and running through the house. Mr. Meeler requested them to leave, but they declined to do so until they got ready. Finally, deceased procured a pistol from Overton and went for a fiddler but returned without one. In the meantime the party was augmented by the defendants Carl Williams and his brother-in-law Frank Mason, who lived at Black Mountain, several miles distant. Mason had formerly lived at Mary Helen and removed to Black Mountain. He and Williams had returned to get a cow belonging to Mason and had gone to the home of Overton to procure a rope, and upon learning that he was at Meeler's went to that place. They were invited in, but it is admitted that neither of them partook of any of the home-brew.

Oscar Overton was somewhat intoxicated, and his wife requested her brother Frank Mason to procure his pistol from Brock. Frank did this. Apparently the Brock party became offended, and Carl Williams told Frank to give him the pistol, which he did, and Williams placed it in his holster, though in so doing he made no hostile demonstration. As testified by practically all the others present, Meeler had frequently repeated his request to Brock and his party to leave. They did not heed him, but shortly after Williams took the pistol from Mason there was a general breaking up of the party. Williams in some way got on the porch, and the Mary Helen party were also out there. Chitwood, Hembree, and Delph say they were going home to avoid trouble and had reached the porch. The party within the room were menacing them, and Chitwood stood in the door to prevent them from coming out. They did not see Williams leave the room, but in some way he appeared on the porch. The first they saw of him he placed his pistol against Brock and fired and again pressed the trigger two or three

times, causing it to snap. Chitwood snatched the pistol from him and struck him over the head. Williams then went into the house, and the Mary Helen party left. Brock died shortly afterward, it appearing that the ball entered his abdomen about the belt line.

Williams testified that he thought it best to leave, and that he went out on the porch for that purpose. The Mary Helen parties were there with a ar of home-brew. One of them offered him a drink, but he declined, telling them that he was a stranger and did not care to take a drink, when another suggested that he was G—— d—— pimp, and that his block should be knocked off. One of them did strike him with a rock weighing three or four pounds. He dodged, but the rock struck his hand, tearing off his thumb nail. Brock struck him with a pair of brass knucks and he sank toward the floor. Brock grabbed him by the hair and started to strike him again. He drew his pistol and fired. In the meantime some one struck him on the forehead with a large rock. Chitwood was standing in the door at the time preventing any one else from leaving. Chitwood grabbed the pistol from him. Afterwards he went back into the house and washed his face. All of the witnesses testifying admit that Williams and Mason were courteous to every one present, and that Williams shook hands with Brock on his arrival, and that neither Williams nor Mason drank any home-brew nor was either guilty of any impropriety of any kind during the evening up to the time of the final difficulty; and most of the parties present, of whom there were quite a number, testify. Some of the witnesses saw the rock with which Williams was hit. Also it is not denied that his thumb nail was torn off in the rencounter.

The fifth instruction reads: "If you shall believe from the evidence that at the time the defendant shot and wounded Gilbert Brock, if he did so do, the defendant believed and had reasonable grounds to believe that he was then and there in danger of death or the infliction of some great bodily harm at the hands of the said Gilbert Brock and that it was necessary, or was believed by the defendant in the exercise of a reasonable judgment to be necessary to shoot and wound the deceased, in order to avert the danger, real or to the defendant apparent, then you ought to acquit the defendant on the ground of self-defense or the apparent necessity therefor."

It will be noted that the right of self-defense is restricted by this instruction to defending against an attack made by deceased; whereas, according to defendant's evidence, he was assaulted by the party of four acting in concert. He testifies two of them struck him with rocks, that the third blocked the door to prevent any one coming to his assistance, and that the fourth was actively assisting. Clearly, if this theory of the case is correct, he was entitled to defend himself, not only from the attack of Brock, but also from the joint attack of all acting in concert with Brock, if there were such. See Steele v. Com., 192 Ky. 223, 232 S. W. 646. Also the instruction copied limited the exercise of the right of self-defense to the *shooting and wounding* of his assailant, and it may have been construed by the jury to deny that right if such shooting and wounding resulted in the death of the deceased, even though they might believe he was otherwise authorized to shoot and wound his assailant. The instruction in this respect should also be amended, and on another trial a self-defense instruction will be given in the words of the fourth instruction in Steele v. Com., supra.

This case has been tried twice, and by inadvertence two separate sets of instructions, including those given in first trial, were handed the jury by the prosecutor at the close of the argument. As this will not occur again, its effect need not be considered. The employed counsel in his closing argument was guilty of gross misconduct in arguing that the statement read to the jury as the depositions of certain absent witnesses "was not their evidence and was not sworn to by them, but that it was a statement written out and sworn to by the defendant." The court sustained an objection to this argument, but does not seem to have admonished the jury further. Such conduct upon the part of counsel cannot be condemned too strongly, and the trial court should, when it is persisted in, deprive them of the fruits of their labor by discharging the jury, if requested, or by granting a new trial. A number of other questions are raised, but only those above are considered or passed upon in this trial.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent with this opinion.