# WHITE v. STROTHER, ET AL.

1. To let in the exemplification of the probate of a will in the courts of this State, under the act of Congress, no particular form of certificate by the clerk is necessary. If the record is attested by the clerk, and his attestation is certified by the presiding judge to be in due form, it is immaterial how the attestation is made.

2. In an action of trover to recover slaves, it is irregular to ask a witness whether some of the slaves were reputed by the family of the defendant as the children of another of them. To let in the declarations of third persons, in cases of pedigree, it must be shown they are dead.

3. The acts and conduct of slaves towards each other, as family conduct, may be shown in evidence, and the conduct of a slave child in calling another slave mother, is a circumstance which may be proved to a jury, to identify the relation of mother and child.

Writ of Error to the Circuit Court of Greene.

TROVER, by Strother, et al. against White, for the conversion of certain slaves.

At the trial, the plaintiffs claimed title to the slaves, as the legatees of one Medley, and offered in evidence the probate of his will, in Madison county, Virginia, in these terms, to wit: " At a court held for Madison county, 25th July; 1822, this last will and testament of Reuben Medley was produced in open court, and proved by the oaths of Richard H. Field, and William Glassel, two of the witnesses thereto, and ordered to be recorded."

The certificate of the clerk is in these words, to wit: In testimony whereof, I, Belfield Cave, clerk of the said county,

White v. Strother, et al.

certify the foregoing to be a true copy, and hereto affix the seal of my office, and subscribe my name, this 14th day of May, 1840. BELFIELD CAVE, Cl'k.

The certificate of the judge is in these words, to wit: I, Richard C. Booton, presiding judge of the county court of said county, certify that Belford Cave is the clerk of said court, and that his certificate next above is in due form. Given under my hand, this 14th May, 1840.

R. C. BOOTON.

Attached to this paper is the certificate of the Governor of Virginia, under the seal of the State, that R. C. Booton, is presiding justice of the county court of Madison county, Va.

The defendant objected to this evidence on the ground that the certificate of the clerk was insufficient. The objection was overruled and the will admitted.

To identify the slaves, and prove that four of them were children of Silvey, another one of the slaves sued for, a witness for the plaintiff, who during the year 1844 was the overseer for the defendant, was asked whether the four slaves were reputed by the family of the defendant, as the children of Silvey. The defendant objected to this question, on the ground that it should be limited to the defendant himself. The objection was overruled, and the witness answered they were so reputed.

The witness was then asked by the defendant if he had ever heard any of the white family of the defendant say that the four slaves were the children of Silvey, to which the witness replied, he did not recollect that he had, but his impression was, she was so regarded, or reputed, by both white and black. This witness was then asked by plaintiff, whether he had ever heard these four slaves, call the negro Silvey mamma. To this question the defendant objected, but the court allowed it. The witness then answered he had heard them call Silvey mamma.

The defendant asked the court to charge the jury, that if they believed the information of the witness, that these four

91

slaves were the children of Silvey, was derived from what was said by the slaves, and not from what was said by any of the white members of defendant's family, then the evidence was improper, and insufficient, and should not be considered in making up their verdict. This charge the court gave, with the qualification, that if the four slaves had been in the habit of calling Silvey mamma, that was a circumstance for them to take into consideration, with the other circumstances of the case, to identify the slaves in suit.

The defendant then asked the court to charge the jury, they should not consider as proper evidence any conversations of any of the negroes of the defendant. This was given, with the same qualification as above stated.

The defendant excepted to the several rulings of the court, and they are now assigned as error.

A. GRAHAM of Greene, and J. B. CLARKE, for the plaintiff in error, insisted—

1. The certificate of the clerk to the paper purporting to be a copy of the will and its probate, is insufficient—1. [Because it does not state *whose* will is certified. 2. It does not state the copy to be a transcript of the *last* will of Medley as of file in his office. 3. Or that it is a *record* of such last will. 4. Or that the probate is a true copy from the records of his office. 5. Or that there was *any* probate of the will. [Dig. 619, § 1; Tarlton v. Briscoe, 1 A. K. Marsh. 67; Woodley v. Finley, 9 Ala. 716; Bright v. White, 8 Missouri, 422; 1 Greenl. Ev. § 505; Allen v. Allen, Minor, 249.]

2. The question asked the witness, and the charge of the court, that his answer showed a circumstance which might be considered, was the conversation of a slave, and therefore irregular. [Fox v. Lambden, 3 Halst. 275; Glover v. Millings, 2 S. & P. 43; Park v. Hopkins, 2 Bailey, 403; Nettles v. Harrison, 2 McCord, 230; 1 Pick. 245; 3 Marsh. 226; Jackson v. Brown, 18 John. 37; Gregory v. Baugh, 4 Rand. 615.]

WOMACK, contra, contended—

1. The certificate was sufficient. [Brown v. Adair, 1 S.

& P. 49; McRae v. Stokes, 3 Ala. R. 401; Lee v. Hamilton, Ib. 529.] The court will not look beyond the particular objection taken. [Helen v. Wideman, 10 Ala. R. 846.]

2. The evidence admitted, as well as the charge of the court, was proper. [Greenl. Ev. 116 to 120; Jackson v. Cooley, 8 John. 99; Jackson v. King, 5 Cowen, 237; Phelps v. Foot, 1 Conn. 387; Gregory v. Baugh, 4 Rand. 616; Cowen & Hill's Notes, 619; Pool v. Bridges, 4 Pick. 378; 11 Pick. 309; McNeal v. Reynolds, 9 Ala. R. 313.]

GOLDTHWAITE, J.—1. The act of Congress does not prescribe the form of certificate by which the clerk of a court in a sister State shall certify the record to make it evidence in another State, or indeed that any certificate shall be made by that officer. The record is proved whenever there is the attestation of the clerk with the seal of the court annexed, if there be a seal, together with the certificate of the presiding judge, that the *attestation* is in *due form*. It is therefore the certificate of the judge which establishes the validity of the form pursued by the clerk, and it can make no difference what this form is, when the subject matter attested shows itself a matter of record. Every objection to the attestation of the clerk must therefore resolve itself into a mere question of form, whenever his name and his office is disclosed on the record by any mode of attestation, and is concluded by the judge's certificate. For example, if a deed or other matter, not one *prima facie* of record, was the subject of exemplification, the certificate of the judge would not be sufficient to let in the copy, but the law making it a record would also have to be shown. [Mitchell v. Mitchell, 3 S. & P. 81.] But when the subject matter is a judgment, or probate of a a will, the presumption is, that these are every where matters of record. This seems well settled by numerous decisions here and elsewhere. [McRae v. Stokes, 3 Ala. R. 401; Lee v. Hamilton, Ib. 529; Ferguson v. Harwood, 7 Cranch, 408; Smith v. Blagg, 1 John. Ca. 238.] The case of Allen v. Allen, Minor, 240, referred to, is not a decision on the form of the clerk's certificate, though so stated in the head note, and was probably decided on the ground there was no

sufficient certificate of a judge, as the one set out in the report is evidently defective. We think there was no error in allowing the exemplification to be read as evidence.

2. The question asked the witness as to the reputation in the defendant's family of the relation between Silvey and the other slaves, does not come within the rule of hearsay evidence, as applicable to proof of pedigree. Hearsay evidence is never admissible, even in such cases, except to prove the declarations of *deceased* persons. [Phil. on Ev. 238; Greenl. Ev. § 103.] The reputation of relationship, if it existed, in the family, must have arisen from the knowledge of the fact, in some of the members, and their subsequent declarations to others, or from the acts and conduct of the slaves themselves, or of the whole members of the family, towards them, and in either case the individuals making the declaration, or witnessing the acts and conduct, would furnish better evidence.

3. We must not confound this reputation, which is evidently nothing more than hearsay, with the acts and conduct either of the slaves themselves towards each other, or of the family towards them. Such conduct and acts would, we think, be proper evidence to go to a jury, on the same principle as obtains in cases kindred to those of pedigree, where *family conduct* is the subject of inquiry. The tacit recognition of relationship, the disposition and devolution of property, and many similar facts and circumstances from which the opinion and belief of those who must be presumed to know the fact, may be inferred, is certainly entitled to much consideration. [Greenl. Ev. § 105.] If the witness had been asked, what the treatment of these slaves in regard to a supposed relation between them was, in the family, it would in our judgment have been entirely proper, within the rule just quoted. It is to this class of evidence that the conduct of the children towards their supposed mother belongs. If the former called the latter mother, we can perceive no just ground to exclude the evidence, any more than to exclude proof that the latter had nursed them when infants.

On the whole case, the only error seems to be the allow-

ance of the qustion as to the general reputation in the family of the relation between the slaves.

For this error the judgment is reversed, and the cause remanded.