CASE 44—CONTESTED WILL—NOVEMBER 14.

# Turner's Guardian v. King.

APPEAL FROM BELL COURT OF COMMON PLEAS.

1. INSTRUCTIONS TO JURY.—The rule in criminal cases requiring the court to give the whole law of the case does not apply in civil actions. Therefore, the contestants of a will can not complain upon appeal that no instruction was given upon the subject of undue influence, none being asked.

2. WHERE THE CHARACTER OF A WITNESS IS ATTEMPTED TO BE IMPEACHED the court should not confine the inquiry to his character for truth, but should permit it to extend to his general moral character. But the inquiry should relate to a period so near the time at which the testimony is offered as to induce the rational belief that the bad reputation of the witness for morals still exists.

   It was error in this case to admit testimony showing that sixteen years before the trial a woman who had testified had the reputation of being unchaste. ·

3. EVIDENCE IN WILL CONTEST.—A half-brother of the testator being the only contestant of a will devising the bulk of the testator's estate to a cousin, it was incompetent to admit testimony giving the history of a family feud and showing the testator's hostility to certain of his uncles who were not parties to the record and were not claiming any interest in the estate.

4. SAME.—Testimony as to the acts and declarations of the testator showing his affection for his cousin, the principal devisee, was competent upon the issue as to whether the testator executed the will.

5. SAME.—Upon the issue as to whether the testator was twenty-one years of age the family Bible of the father of testator's mother was not competent evidence, it being evident that the entries therein fixing the dates of the birth of the children of testator's father are not a part of the family record of testator's grandfather or of testator's immediate family.

6. AN ALLOWANCE TO THE ADMINISTRATOR TO PAY COUNSEL FEES of the propounders of the will was proper, as the court had the right in its discretion to fix the sum to be paid by the administrator for the service rendered.

WM. H. HOLT FOR APPELLANT.

1. In impeaching a witness the inquiry should be confined to the
   *general reputation* of the witness for morality. It was improper,
   therefore, to admit testimony as to the reputation of a witness
   for chastity. Besides, the impeaching testimony related to the
   character of the witness sixteen years before the evidence was
   given, and for that reason also was incompetent.
2. It was improper to permit the appellees to prove that the deceased
   was involved in a difficulty when the will was made, and that his
   relations had taken part against Jack Turner in the latter's
   trouble, and that the latter was not on good terms with his
   brother and the Lanes.
3. What the deceased said long after executing the paper, as to hav-
   ing made a will, was not competent evidence. Nor was it com-
   petent to prove the handwriting of an alleged family record by
   common report in the family.

C. W. METCALFE OF COUNSEL ON SAME SIDE.

J. W. ALCORN FOR APPELLEES.

1. Testimony as to the separation of the testator's father and mother
   and as to the unchaste life which the mother afterwards led was
   competent for the purpose of showing that the will was not irra-
   tional in its provisions, or contrary to the natural duty and feel-
   ings of the testator. (Milton v. Hunter, 13 Bush, 170.)
2. Appellant has no right to complain of the failure of the court to
   submit to the jury questions as to which no instructions were
   asked. (Civil Code, sec. 317, sub-sec. 5.)
3. There can be no reversal on account of the admission of testimony
   as to which there was neither objection nor exception.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

A paper purporting to be the will of Alvis Turner was ad-
mitted to probate in the Bell County Court, and on an ap-
peal to the circuit court the order of probate was sustained.

The testator, at the time of his death, left his mother and
half brother surviving him, also his grandmother and uncles
and aunts. With one or more of his uncles he was not on

friendly terms, but with his other relatives no feeling of hostility existed.

He left an estate valued at about $20,000, and in the devise made gave to his mother $25; to his half brother, the appellant, $1,000, and the balance of his estate (save one or two small legacies), he gave to his cousin, Jefferson King, the appellee.

The paper disposing of this estate was executed on the 4th of March, 1889, and in less than one month from that date the testator was murdered by one Burch.   In this record is interwoven the history of a relentless warfare, carried on by two brothers, who were the leaders of their respective clans, —Jack Turner, the father of the testator, of the one, and his brother, Berry Turner, of the other.

This character of testimony was introduced by the propounders of the will for the purpose of showing the hostility of the father of the testator to members of his own family, and that this feeling had descended from the father to the son (the testator), whose dislike for his own kindred, by reason of their treatment of his father, released him from any natural obligation to provide for them in the final disposition of his estate.

The father of Alvis (Jack Turner) married a Miss Lane, and Alvis was the offspring of that marriage.   He killed Lane, the father of his wife, in the year 1872, and shortly after Turner was shot from the window of a hotel kept by the husband of a sister of Turner's wife. It is then said that Alvis (the testator), avenging his father's death, slew one of the opposing clan, and was then killed by one Burch, and the appellee, King, who had been the fast friend of Alvis, took the life of Burch.

The mother of Alvis, shortly before her father had been killed, left her husband, or he abandoned her, and in a few

years left this State for the State of Missouri, and there married a man by the name of Levi Cogle. She took with her to Missouri her daughter, who lived until she was seventeen years of age, and died shortly before the paper in controversy was executed.

In the examination of this record we find but two issues presented to the jury by the instructions given. One of those issues is, was the paper, said to be the will of Alvis, signed by him? If so, was he, at the time, twenty-one years of age? There was a mass of testimony on each side as to the age of Alvis when the paper was signed, and this seems to have been the issue to which the attention of the court and jury was called on the trial below. It is insisted by counsel for the contestants in this court that the paper was procured by the exercise of an improper influence over the testator by the appellee, who is the principal devisee, and yet no instruction was asked by the contestants upon that theory, and the case seems to have gone to the jury on the formal instruction as to the signing of the paper by the testator, and its attestation by the subscribing witnesses in his presence and at his request, and an instruction based on testimony conducing to show that the testator was a minor when the paper was signed.

The two instructions given are unobjectionable, and if the contestants desired to present the question of undue influence, an instruction should have been offered on that branch of the case, as it was not the duty of the trial court to raise the issue for them, although the testimony may have warranted the consideration of such an issue by the jury. In a criminal case it is the duty of the court to give the whole law of the case, but in a civil action the court is not required, unless called on to do so, to give instructions embracing every theory of the plaintiff's cause of action that is or may be

supported by the testimony, or that of the defense, and if the instructions given are otherwise unobjectionable, the fact the court has omitted to give to the jury every instruction authorized affords no ground for a reversal. We can, therefore, look only to the questions raised as to the competency of certain testimony considered by the jury, and to which objections and exceptions were made and taken at the time the witnesses were permitted to answer.

On the issue as to the disability of infancy on the part of the testator when this paper was signed the witnesses were numerous and the testimony very conflicting. If the birth of Alvis was in the year 1867 he was of full age at the date of the paper. If born in the year 1868 he was under age and could make no disposition of his estate by last will and testament.

The mother of Alvis (the testator) testifies that he was born in the year 1868, detailing facts and circumstances sustaining the verity of her statement, and at the same time she is corroborated by the testimony of others who were her neighbors, and who detail facts upon which they base their knowledge of testator's age; and, on the other hand, witnesses for the propounders made statements and detailed facts as to the birth of Alvis equally as convincing; and, while a jury in weighing the testimony might concede to the mother a more accurate knowledge as to the date of such an event, it is argued that the incompetent and irrelevant testimony permitted to go to the jury had a tendency to affect the credibility of the mother's statement, and to otherwise influence the jury in sustaining the paper as the last will of her son.

It is apparent that the statements of one or more witnesses to the effect that some sixteen years or more before they were called to testify the mother of Alvis was

regarded as an unchaste woman was calculated to lessen the weight of, if , not to destroy, her testimony. This court has often held that in impeaching the character of a witness the party seeking to destroy his testimony is not confined to the character of the witness for truth, but may show that his general moral character is bad, and in the attack made his character and standing may be proven, not only at the time he is called to testify, but prior to that time. (Manion v. Lambert, 10 Bush, 295.)

The inquiry may well be made as to the extent this rule is to be carried. Is it to be said that the vices and immoralities of youth are to follow the witness as long as he or she may live, or should it not be confined to a period so near the time at which the testimony is offered to impeach the character of the witness as would induce the rational belief that such bad reputation for morals still exists? Is the mother's character for truth to be lessened or destroyed because witnesses say that sixteen years before they are called to testify she was regarded as an unchaste woman, a period almost as remote from the time of this trial as the birth of the testator, her son, whose right to make a will is now involved? We think not. What is the general moral character of the witness, is the question to be propounded, and the answer that she was unchaste *sixteen years ago* is not responsive to the question and should have been excluded from the jury.

In Sword v. Nestor, 3 Dana, 453, and Evans v. Smith, 5 Mon., 363, the chastity of the witness was directly involved. It was pertinent to the issue in each case—a case of bastardy, involving the paternity of the child—and the competency of the testimony was even made a question in that class of cases.

The son had visited his mother shortly before this paper was executed. The mother had reared his sister until she

was sixteen or seventeen years of age, and the cause of the separation of the mother of Alvis from his father, whether by reason of family troubles or by reason of the want of virtue on the part of the wife, are facts not relevant to the issue between these parties. Nor was it competent to place before the jury the history of the two warlike clans for the purpose of showing a reason or motive on the part of the testator to provide more liberally for his cousin, the appellee, than those more nearly allied to him. His hostility to one or more of his uncles, produced by the feuds between his father and his father's brothers, ought not to have influenced the jury in their finding. These feuds began when the testator was not exceeding two or three years of age.

His uncles are not parties to the record, or claiming to be entitled to any part of this estate. The only party to this appeal or that from the county court is the appellant, who is the half brother of the testator and children by the same father, and how the bad feeling towards his uncles prompted the execution of the paper in controversy, so far as to affect the half brother on any issue made or that could have been made in this case, we can not well see. His friendship or affection for the appellee, shown by acts or declarations of the testator, was competent; but the fact of the appellee belonging to the one clan or the other, or the history of the many battles between the contending parties on Yellow creek, are matters foreign to this controversy, and the whole should be eliminated from this case, as well as the proof of the hostility on the part of the testator's father towards his brothers and sisters. Not one of them is a claimant or party, and if, for the purpose of showing that his failure to provide for these uncles in preference to his cousin, the appellee, resulted from this bad blood, it is conceded that the aunts and other uncles of the testator were friendly to both father and

son.   This case was tried below upon testimony, much of it irrelevant and incompetent, and its admission calculated to direct the attention of jurors to immaterial issues made upon facts having nothing to do with this case.

In the attempt to establish the age of the testator there was offered as evidence the family Bible of the father of the testator's mother.   This was incompetent, and, while it might otherwise be introduced as evidence, the original being now before us, it is manifest that so much of the entry as attempts to fix the date of the births of Turner's children is not a part of the family record of his grandfather or that of testator's immediate family.   It appears that there was no objection to this testimony, but it is argued here that it was incompetent, and as the case must go back it is proper to pass on this question, and whether offered by the one party or the other should be excluded if an objection is interposed.

There was an allowance made to the administrator to pay counsel fees for the propounders of the will, and as the administrator is not a party in interest, other than as the personal representative, and there being no supersedeas, he has doubtless made the payment, but if unpaid we are not disposed to disturb that order, as the court in its discretion could determine and direct the administrator the sum to be paid by him for the services rendered.

The judgment establishing the paper as the will of Alvis Turner is reversed and remanded, with directions to grant a new trial and for proceedings consistent with this opinion.

To a petition for rehearing filed by counsel for appellee the court delivered the following response:

We think it immaterial whether the mother of Alvis left

her husband before or after the death of her father, as it could not have affected the question as to the right of appellee to establish a want of chastity on the part of Alvis' mother years before the witness was called to testify.

We were not under the belief that the Bible, directed to be excluded as testimony, was offered as evidence by the appellee, but as the case had to go back, its want of verity as to the ages of parties therein mentioned was so patent as to authorize this court to say that it was not competent and thus avoid any error in regard thereto upon a second trial of this case.

Opinion modified as to the time of the separation between Alvis' father and mother.

Petition overruled.