(110 So. 157)

BRADLEY v. STATE. (7 Div. 193.)

(Court of Appeals of Alabama. April 20, 1926. Rehearing Denied Sept. 7, 1926.)

1. **Indictment and information** ⬯110(6)—**Indictment for statutory rape, following language of statute held not demurrable for alternative averment (Code 1923, § 5411).**

Indictment, under Code 1923, § 5411, charging that defendant "did have carnal knowledge of B., a girl over 12, and under 16, years of age, or did abuse such girl in the attempt to have carnal knowledge of her," following language of statute, was not demurrable because of the alternative averment.

2. **Criminal law** ⬯858(3).

Question of permitting depositions in evidence to go to jury room *held* within discretion of trial court.

On Rehearing.

3. **Criminal law** ⬯434—**Entries made in Bible by grandmother, giving birthdates of prosecutrix, her mother, father, and another, apparently made at same time, held inadmissible as entries from family Bible (Code 1923, § 5411).**

Entries made in Bible by grandmother of prosecutrix, apparently written at same time, giving birthdates of prosecutrix, her mother, father, and another, where grandmother had other children besides prosecutrix's mother, *held* inadmissible as entries from family Bible, in prosecution under Code 1923, § 5411, for carnal knowledge of girl between ages of 12 and 16, to prove birthdate of prosecutrix.

4. **Criminal law** ⬯400(5).

Birthdate entry in Bible *held* inadmissible in aid of testimony of witness making it, since it was secondary evidence, which is not admissible, where primary proof is available.

5. **Witnesses** ⬯406—**Evidence that doctor attending prosecutrix at birth did not practice after being injured in certain cyclone was admissible to impeach state's witness' testimony that she was born after date of cyclone (Code 1923, § 5411).**

In prosecution, under Code 1923, § 5411, for carnal knowledge of girl between ages of 12 and 16, where question of prosecutrix's age was essential question, evidence that doctor attending prosecutrix at birth did not practice after being injured in certain cyclone was admissible to impeach state's witness' testimony that she was born after date of cyclone.

6. **Criminal law** ⬯1144(½).

In reviewing action of trial court, every reasonable presumption should be indulged in favor of its rulings.

7. **Criminal law** ⬯1159(2).

Where the overwhelming evidence is against verdict, appellate court should set it aside.

8. **Criminal law** ⬯1159(5)—**New trial will be granted in statutory rape prosecutions, where jury imposes excessive punishment (Code 1923, § 5411).**

Where punishment, under Code 1923, § 5411, giving jury discretion as to punishment in prosecutions for carnal knowledge of girl over 12 and under 16, is so excessive as to be clearly based on motives other than upon facts in case, new trial will be granted.

9. **Rape** ⬯52(4).

Evidence touching age of girl *held* not to support conviction for carnal knowledge of girl

between ages of 12 and 16, under Code 1923, § 5411.

Appeal from Circuit Court, Etowah County; W. J. Martin, Judge.

C. H. Bradley was convicted of having carnal knowledge of a girl over 12 and under 16 years of age, and he appeals. Reversed and remanded.

Certiorari denied by the Supreme Court in Bradley v. State, 110 So. 162.

W. J. Boykin and O. R. Hood, both of Gadsden, for appellant.

The indictment was subject to demurrer. Rogers v. State, 117 Ala. 192, 23 So. 82; King v. State, 137 Ala. 49, 34 So. 683; Horton v. State, 53 Ala. 488. The Bible containing the date of birth of the prosecutrix was not admissible in evidence. Bertram v. Witherspoon's Adm'r, 138 Ky. 116, 127 S. W. 533, Ann. Cas. 1912A, 1217; 10 R. C. L. 1137; 1 Ency. of Evidence, 734; People v. Mayne, 118 Cal. 516, 50 P. 654, 62 Am. St. Rep. 256. The argument of the solicitor was improper, and should not have been allowed. Birmingham Ry., Light & Power Co. v. Gonzalez, 183 Ala. 273, 61 So. 80. The jury should have been permitted to take the deposition of Turk with them for consideration in making up their verdict. Code 1923, § 9511; Shirley v. State, 144 Ala. 42, 40 So. 269; Alabama City G. & A. R. Co. v. Heald, 178 Ala. 646, 59 So. 461. The verdict was the product of prejudice or other improper motive, and should have been set aside. Central of Georgia R. Co. v. White, 175 Ala. 60, 56 So. 574; Standard Oil Co. v. Humphries, 209 Ala. 493, 96 So. 632.

Harwell G. Davis, Atty. Gen., and Robt. G. Tate, Asst. Atty. Gen., for the State.

The indictment was not subject to demurrer. Code 1923, § 5411; 8 Michie's Ala. Dig. 629. Entries in a family Bible are admissible as evidence to prove fact and date of birth, notwithstanding the entrant is living. 10 R. C. L. 1138; Bertram v. Witherspoon's Adm'r, 138 Ky. 116, 127 S. W. 533, Ann. Cas. 1912A, 1217; Boyett v. State, 130 Ala. 77, 30 So. 475, 89 Am. St. Rep. 19; Cherry v. State, 68 Ala. 29; People v. Ratz, 115 Cal. 132, 46 P. 915; James v. State, 125 Ark. 269, 188 S. W. 806; State v. Hairston, 121 N. C. 579, 28 S. E. 492; Simpson v. State, 45 Tex. Cr. R. 320, 77 S. W. 819; People v. Slater, 119 Cal. 620, 51 P. 957; Wiseman v. Cornish, 53 N. C. 218; Pearce v. Kyzer, 16 Lea (Tenn.) 521, 57 Am. Rep. 240. A wide latitude is allowed on cross examination. 13 Michie's Ala. Dig. 1148. The argument of the solicitor was based upon facts in evidence, and was proper. Cross v. State, 68 Ala. 476. It was within the discretion of the court whether the jury should be permitted to take with them the deposition of the witness Turk. Code 1923, § 9511; Smith v. State, 142 Ala. 14, 39

So. 329; Lurie v. Kegan-Grace Co., 209 Ala. 339, 96 So. 344.

RICE, J. Appellant was convicted of the offense denounced in section 5411 of the Code of 1923, and sentenced to serve 10 years in the penitentiary.

[1] The indictment charged that, "before the finding of this indictment," defendant, "being then and there a man over 16 years of age, did have carnal knowledge of Berta Mae Wilder, a girl, over 12, and under 16, years of age, *or did abuse such girl in the attempt to have carnal knowledge of her*, contrary to law, and against the peace and dignity of the state of Alabama." The indictment was demurred to on the principal ground, variously stated, that the alternative averment therein framed as it was rendered it defective. In charging the offense, the indictment follows the language of the statute providing and describing the elements of the crime. The demurrers were properly overruled. 8 Mich. Ala. Dig. p. 629. The prosecuting witness testified that the criminal act was committed in the month of July, 1924, and, further, that she was born on October 9, 1908.

The state's witness, Sarah Glascow, testified that she was the grandmother of the girl (with whom defendant was alleged to have had the intercourse); that she was in the house (where the girl was born) when the girl was born; and that the girl was born October 9, 1908. She further testified that she made a record in the Bible (shown to her) of the birth of the girl at the time she was born; that the Bible was the family Bible of the witness, and that the date recorded in the Bible (October 9, 1908) as the date of birth of the girl was correct; that the Bible contained a record of births and deaths of members of her (witness') family.

The state thereupon offered in evidence the record of the birth of the girl as contained in the Bible. Defendant objected. The objection was overruled and exception duly reserved.

Before answering the question raised as to whether or not the court erred in overruling defendant's objection and allowing the record of the birth of the girl as contained in the Bible to be introduced in evidence, perhaps we ought to say that this witness, Sarah Glascow, further testified that, when the girl was born, a Dr. Turk was the attending physician, and that another state's witness, an uncle of the girl, fixed the date of her birth as October 9, 1908. Also that the defendant offered much evidence to show that the girl was born in April, 1908, this fixing her age at the time of the alleged intercourse at some 16 years and 3 months. The deposition of Dr. Turk was introduced in evidence by the defendant, and was to the effect that he had attended the mother of the prosecut-

ing witness (the girl) when a child was born to her in April, 1908; that on April 24, 1908, a cyclone swept the community where he lived, seriously injuring him; that he never practiced in the community for the family involved after his injury in said cyclone; and that the child at whose birth he officiated was born a few days prior to the cyclone. Several other witnesses for the defendant fixed the date of birth of the girl as being prior to this cyclone, which, it seems, was practically conceded to have occurred in April, 1908.

It thus appears that as the age of the girl—as being less than 16 years at the time of the alleged intercourse—was an essential element of the crime charged against appellant, so the testimony on behalf of the state and the defendant was in sharp conflict. This being true, did the court err to a reversal in overruling defendant's objection and letting the Bible record of the girl's birth go in evidence?

In the early case of Cherry v. State, 68 Ala. 29, the Supreme Court, whose decisions we are to follow, said:

"Any book, document, or paper containing entries made by a parent or relation, as to such facts [of birth, marriage and death] may be received as the written declarations of deceased persons who respectively made them."

In the case of Landers v. Hayes, 196 Ala. 533, 72 So. 106, that court, speaking through Mr. Chief Justice Anderson, had this to say:

"The rule seems to be that hearsay evidence is always admissible to prove pedigree, and this term embraces not only questions of descent and relationship, but also the particular facts of birth, marriage, and death, and the time when these events may have happened. Such evidence is held admissible not only from the extreme difficulty of producing any better, but is resorted to upon the ground of the interest of the declarants in all such matters of family relationship and connection. These declarations, however, *whether in writing* or by word of mouth, should be confined to some members of the family as distinguished from a general rumor or neighborhood reputation, and as a predicate therefor it must appear *that the declarant has since died.*"

From 10 Ruling Case Law, p. 1136, we quote and approve this:

"As a general rule, entries in a family record or Bible are admissible as evidence in matters of pedigree in order to prove relationship and the date and fact of birth, marriage or death of a party. * * * And while there has been some conflict of authority on the point it is generally deemed to be indispensable, for the use of these statements, *that the entrant be unavailable as a witness.*" (Italics ours.)

In the present case, neither the conditions to, nor reasons for the admissibility of, the Bible entry allowed in evidence were present. While the entry was made by a member of the family (grandmother of the girl) the entrant was not dead, nor unavailable as a witness, but was in life and in court. The entrant testified to the fact sought to be shown by the entry; hence no reason, no necessity, existed for the reception of the entry. The only purpose or effect of it was to lend verity to the testimony of the declarant herself.

Being mindful of the reverence with which the Holy Book is regarded, and the credit one is inclined to accord to even temporal records placed therein, we are constrained to hold that this evidence in all probability had great weight with the jury on the material inquiry to which it was addressed, and that its presence was calculated to and did prejudice defendant's case. The Bible entry allowed in evidence was not legal evidence in the case, and its admission was error. Cherry v. State, supra; Landers v. Hayes, supra; White v. Strother, 11 Ala. 720; Elder v. State, 123 Ala. 35, 26 So. 213; Rogers v. De Bardeleben Coal & Iron Co., 97 Ala. 154, 12 So. 8; 1 Greenleaf on Evidence (16th Ed.) §§ 114a and 114b; Chambers v. Morris, 159 Ala. 606, 48 So. 687; Elder v. State, 124 Ala. 69, 27 So. 305; Sheffield Iron Corp. v. Dennis, 204 Ala. 530, 86 So. 467; Campbell v. Wilson, 23 Tex. 252, 76 Am. Dec. 67; So. Life Ins. Co. v. Wilkinson. 53 Ga. 535; Woodard v. Spiller, 31 Ky. (1 Dana) 179, 25 Am. Dec. 139; 1 Encyc. of Ev. p. 734; 10 R. C. L. 1136.

There was no error in refusing to admit evidence, offered by defendant, that Dr. Turk was so injured by the cyclone that he was unable to practice thereafter until the time he removed from the community. Anyhow, this was shown without dispute by the deposition of the said Dr. Turk.

On cross-examination of defendant's witness Wallace, the party who accompanied defendant and the girl on the occasion when the unlawful intercourse was alleged to have occurred, the state was permitted, over defendant's timely objection, to ask the witness if, at the time, he knew the girl was an inmate of the Industrial School, and to have him answer that he did know this fact. We are unable to see the relevancy of this evidence. It threw no light upon the issue of defendant's guilt vel non, and does not appear to have been a proper inquiry even on cross-examination. Doubtless it tended to prejudice the jury against the defendant, and its admission was error.

[2] Whether or not depositions read in evidence to the jury will be permitted to be taken by the jury to the jury room when they go to make up their verdict is a matter within the discretion of the trial court. Code 1923, § 9511; Smith v. State, 142 Ala. 14 (27), 39 So. 329. While we are unwilling to affirm as a matter of law that the court abused its discretion in refusing to allow the jury to take with them the deposition of Dr. Turk,

yet we can see no good reason why they were not so permitted.

The portion of the argument of the solicitor, refusal to exclude which is the basis of an exception, does not in our opinion transgress the rule prevailing in this state. Cross v. State, 68 Ala. 476. True, the sole issue in the case was as to whether or not the appellant had intercourse with the prosecuting witness (the girl), she being at the time under 16 years of age, and testimony as to her being an inmate of the Girls' Industrial School was irrelevant; yet the prosecutrix (if we may term the girl such) was allowed to testify, without objection, that she was an inmate of that school, thereby, in our opinion, affording a basis for the argument objected to.

While a reading of the record gives the impression that the evidence to the effect that the girl in question was over the age of 16 years at the time of the alleged intercourse considerably outweighed that to the effect that she was under such age, yet we do not feel authorized to hold that the verdict of the jury was so palpably against the weight of the evidence on this point as to call for an adjudication of error on the part of the trial court in overruling appellant's motion for a new trial. With only legal evidence admitted on another trial, the question will bear another aspect, and, inasmuch as the case must be reversed on other grounds, we refrain from a decision of this question at this time.

For the errors pointed out, the judgment is reversed and the cause remanded.

Reversed and remanded.

### On Rehearing.

SAMFORD, J., with whom is BRICKEN, P. J., concurring, bases the action of the court in denying the state's application for rehearing upon the following opinion as being the law of the case:

[3] The admission of entries of the date of birth in a Bible to be admissible as independent evidence is confined to original entries made in a Bible that contains a history of the facts about which it purports to speak, and does not permit isolated and incomplete entries in irregular places to be admitted in evidence, especially when the entries do not appear to be original and to bear on their face, when considered in connection with other facts in the case, intrinsic evidence of their improbability as a true record of the family history. 10 R. C. L. 1137, par. 343.

Such entries are too easy of fabrication to be admitted as evidence without the closest scrutiny, and, where they do not bear the unmistakable stamp of authenticity, they should be excluded. The Bible here offered was testified to as being the family Bible of witness, who was the grandmother of the prosecutrix. In it there was no record made as to witness' family, except the marriage of the girl's mother to B. F. Wilder, and the four entries of the date of birth of Berta Mae, born October 9, 1908; Roy born October 27, 1914; N. N. Glascow, prosecutrix's mother, born September 30, 1891, and W. F. Wilder, prosecutrix's father, born August 1, 1887, following each other in the order named, all written in pencil, and having every indication of having been written by the same person and at the same time. The grandmother testified that she wrote them down and at the time each was born. That the witness did the writing may be true. That she wrote them at the time each was born seems improbable. If she had done so, the oldest would have appeared first in the list and the youngest last, and it appears that at the time of birth W. F. Wilder was not even connected in a remote degree with witness. Moreover, the record did not contain the name or birth of witness' husband, nor her own, nor her marriage, nor the birth of any of her own children, other than the mother of prosecutrix, though she had others, nor of any of her other grandchildren, save and alone Berta Mae and Roy. It is clear, therefore, that the entries were not intended as the family record of witness, and surely it could not be the family record of W. F. Wilder, the girl's father, as it is not claimed that it was kept by him or a member of his household. The entries were not admissible as entries from the family Bible. Turner v. King, 98 Ky. 253, 32 S. W. 941, 33 S. W. 405; Bryant v. McKinney, 96 S. W. 809, 29 Ky. Law Rep. 951; and authorities supra.

But aside from the foregoing, family records are admitted as secondary evidence, and are not admissible where the person making the entry is at hand and primary evidence can be had. The entry in the record is admissible as a declaration of the person making it and of the other members of the family, who are presumed, from its possession by and accessibility, to have known of the entries, as a family record. 1 Greenleaf, p. 200, par. 114d.

The rule for admission of entries from family Bibles or missals is declared to be: "An entry in a family Bible stating the fact and date of birth of a member of the family is competent evidence, and may be admitted where the person who made it is dead or unknown," and, we may add, inaccessible. This rule is supported in this state by the opinion in Cherry v. State, 68 Ala. 29, White v. Strother, 11 Ala. 720, Baintree v. Hingham, 1 Pick. (Mass.) 245, and a long list of cases both in this country and England, cited in note, Ann. Cas. 1912A, 1218. The opinion in the Cherry Case has been recently approved in Duncan v. Watson, 198 Ala. 180, 182, 73 So. 448, and Landers v. Hayes, 196 Ala. 533, 536, 72 So. 106. So, whether the

entries in the Bible rises to the dignity of a family record or not, such entries are not admissible in this case with the party who claims to have made them being present and testifying.

[4] Nor is it permissible to introduce the entries as a memorandum in aid of the testimony of the witness. A memorandum is but secondary evidence of the facts of which it speaks, the primary evidence is the knowledge of the witness, if he is able to testify truly as to the facts mentioned independently of the memorandum, and it is only when this primary proof is not available that resort may be had to the secondary. 10 R. C. L. 909, par. 63.

[5] It was testified to by the state's witness that Dr. Turk attended the mother of Berta Mae at the time of the birth of prosecutrix. The time of a cyclone was fixed as of April, 1908. Defendant sought to prove that Dr. Turk was injured in the cyclone, and did not practice in Albertsville after that time, and that, therefore, if he officiated at the birth of Berta Mae, it must have been before the cyclone. This evidence would tend to impeach the testimony of the state's witness on the crucial issue in the case, and should have been admitted. "Any evidence relevant to the issues which tends to establish their relation to each other of cause and effect is admissible." E. T. V. & G. R. Co. v. Lockhart, 79 Ala. 315.

It was in evidence without objection that prosecutrix was, in July, 1924, the time alleged in the indictment, an inmate of the Girls' Industrial School at Birmingham, a state institution for wayward girls. The solicitor was within the bounds of legitimate argument, therefore, when he made the statement to which exception was taken.

[6, 7] It is urgently insisted that the defendant should have been granted a new trial on the ground that the verdict of the jury was excessive and contrary to the great weight of the evidence. Prior to the act of the Legislature approved September 22, 1915 (now section 6088 of the Code 1923), there was no appeal from motions denying motions for new trial in criminal cases. Since that time such motions are on the same footing as those in civil cases, except in so far as they may differ by reason of the burden of proof. In passing upon and reviewing the action of the trial court every reasonable presumption should be indulged in favor of the correctness of the rulings of the trial court. This for the obvious reason that appellate courts should be slow to disturb the verdicts of juries, and, second, the trial judge has had the advantage of seeing and hearing the witness and parties and advantages in consideration which cannot be transferred by transcript. On the other hand, where the overwhelming evidence is against the verdict of the jury, no sort of reasoning would justify an appellate court in refusing to take prompt action in setting aside the verdict. It is evident from the record that much silent and invisible pressure entered into the trial of this case. Experienced trial lawyers know and recognize that this frequently happens in the trial of cases. This is evidenced by the tenseness with which the material witnesses gave testimony, the character of their answers, the questions of the lawyers engaged in the trial, the rulings of the court, the character of the offense, the extreme penalty imposed by the jury, and many things unexplained and unexplainable.

[8] The verdict was for 10 years' imprisonment in the penitentiary, being the extreme limit fixed by statute. Is it excessive? Allowing every intendment against the defendant, the girl was within 3 months of the age of consent, the act was on her part entirely voluntary, there was no evidence that defendant knew her age, there was no force, arts, flattery, or inducement offered, other than the mutual desire to satisfy passion. If, under the facts, the verdict was not excessive, what should be the punishment under facts showing aggravation. The amendment to the statute raising the age of consent to 16 years is of recent origin. When the minimum and maximum penalty as fixed by this statute is considered, it could hardly be said that the Legislature had in mind the maximum sentence for a violation unattended by aggravating circumstances. It is true that the statute says, "Punished at the discretion of the jury," and on appeal appellate courts cannot take away that discretion by saying what the punishment shall be, but even the discretion placed with juries in fixing punishments is not unrestrained, and, where the judgment in civil cases or punishment in criminal cases is so excessive as to clearly indicate a judgment or punishment based on motives other than upon facts in the case, the appellate court will grant a motion for a new trial. Cox v. Birmingham Ry. L. & P. Co., 163 Ala. 170, 50 So. 975; M. & M. R. Co. v. Ashcraft, 48 Ala. 15. If the duty rest upon the appellate court to prevent the imposition of an excessive penalty measured in dollars and cents, how much more imperative is that duty when the penalty is the liberty of a citizen.

[9] On the motion for a new trial on the ground that the verdict was contrary to the great weight of the evidence, the question turns upon the evidence touching the age of the girl. On this question the state offered the girl herself, who testified that she was born October 9, 1908. This, of course, is hearsay, but is that class of hearsay admissible in evidence; it being presumed that her age and birth was an accepted fact of which she knew. John Glascow, an uncle of Berta Mae, testified that the date of birth was October 9th. This witness was 27 years

old at the time of trial, and therefore a lad of 10 at the time of birth. When this witness was asked "how he remembered the date," he answered "I just remembered it." This part of his testimony at least is most unlikely. The only other witness to testify to October 9th being the date of birth was old Mrs. Glascow, the grandmother. Both John and Berta Mae being members of the family of the grandmother during childhood, it would appear reasonable that such information as they received as to age came from the grandmother, so that the principal evidence as to the age of Berta Mae came from Sarah Glascow, the grandmother. She testified that Berta Mae was born October 9, 1908. On cross-examination this witness testified that the mother of Berta Mae lived with witness in 1908, at the time of the birth of Berta Mae; that during that year Berta Mae's mother did not have a lawsuit with a neighbor Mrs. Pope. She also testified that "the cyclone" took place April 24, 1908; that Dr. Turk, a local physician, attended as physician at the birth of Berta Mae; and that Dr. Turk was seriously hurt in the cyclone; that a house fell on him, from which he remains a cripple to this day. It was well established that "the cyclone" occurred April, 1908, and that Dr. Turk attended as the physician at the birth of Berta Mae. It is also established by all witnesses testifying on the subject, both for the state and defendant, and without dispute, that Dr. Turk was seriously injured in "the cyclone." To prove the date of birth of Berta Mae as being April, 1908, Dr. Turk, the attending physician, says he remembers it, and that it was three days prior to "the cyclone" in which he received injuries rendering him unable to practice, and that he did not practice in Albertsville after that time; that the birth of Berta Mae was the last professional visit made by him in Albertsville. The defendant offered to prove by T. J. Fletcher the injury of Dr. Turk by "the cyclone," and that he never practiced his profession after that time. Why this evidence was not admitted in corroboration of Dr. Turk we cannot see, unless it be conceded that Dr. Turk was so injured, and that afterwards he did not practice his profession. This witness did testify that Dr. Turk did not practice during October, 1908, and could not "get out" without assistance. This witness was a brother-in-law of Dr. Turk, and had every opportunity for knowing the facts under inquiry. W. J. Wallace corroborated the testimony of Fletcher. Tom Tully testified as to the date of "the cyclone," and to a lawsuit pending between the Glascows and Popes, which was called for trial in April, 1908, and postponed on account of the birth of a child, and that a month later the mother of Berta Mae came into court with a 6 weeks' old child in her arms. The foregoing facts as to birth and date were corroborated by Dr. Erwin, a physician who was practicing in Albertsville during 1908, and who was called to attend the mother of Berta Mae a day or, two after "the cyclone," at which time she was in bed with an infant baby; by John Glascow, an uncle of Berta Mae, who visited the mother just after "the cyclone"; by Will Glascow, another kinsman, who visited the Glascow home "a day or two" before "the cyclone"; by Dave Glascow, another kinsman, who visited the home a week after "the cyclone"; by E. O. McCord, a practicing attorney at this bar, who was engaged in the Glascow-Pope lawsuit; by Frank Wilder, the father of Berta Mae, who was present at the birth. There was some other evidence tending to impeach the testimony of Sarah Glascow, but on collateral matter. In addition to the foregoing which was in evidence on the main trial, there was introduced cards, sent through the mail on the day first set for the hearing of the motion for new trial, addressed to the defendant and to the defendant's attorney, and postmarked Gadsden, Ala., in words and figures as follows:

"Remember.

"Every criminal, every gambler, every thug, every libertine, every girl ruiner, every home wrecker, every wife beater, every dope peddler, every moonshiner, every crooked politician, every pagan papal priest, every shyster lawyer, every K. of C., every white slaver, every brothel madam, every Rome controlled newspaper—is fighting the Ku Klux Klan.

"Think it Over.

"Which Side Are You On?"

We have been at pains to set out the foregoing that there may be no uncertainty as to the holding in this case, recognizing the rule that no judgment refusing a new trial should be reversed, unless the appellate court is clearly convinced that the verdict was contrary to the great weight of the evidence. Cobb v. Malone et al., 92 Ala. 630, 9 So. 738. After carefully considering this entire record we are firmly convinced that this case falls within the rule that a new trial should be granted where, "after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust." Cobb v. Malone, supra; W. Ry. of Ala. v. Mutch, 97 Ala. 194, 11 So. 894, 21 L. R. A. 316, 38 Am. St. Rep. 179; First National Bank of Ashland v. Prickett, 19 Ala. App. 204, 95 So. 920.

The application for rehearing is overruled. BRICKEN, P. J., and SAMFORD, J., concur in the foregoing.

RICE, J. I concur in overruling the state's application for a rehearing because of the matters discussed in the opinion rendered on

the original submission. However, I do not concur in the expressions contained in the opinion prepared by my brothers to the effect that defendant's motion for a new trial should have been granted because of an insufficiency of the state's proof as to the age of the girl. There was direct, positive, testimony supporting the state's contention. Its weight and sufficiency were, I think, properly left to the jury, and I cannot see that the trial court would have been justified in substituting his own opinion for theirs, as he must have done if he had granted defendant's motion for a new trial on the ground named.