143 So. 237

## CHRISTIAN v. STATE.

### 8 Div. 542.

Court of Appeals of Alabama.

June 30, 1932.

John E. McEachin, of Huntsville, for appellant.

Thos. E. Knight, Jr., Atty. Gen., for the State.

No briefs reached the Reporter.

BRICKEN, P. J.

The statute alleged to have been violated in this case provides: Any person who has carnal knowledge of any girl over twelve and under sixteen years of age, or abuses such girl in the attempt to have carnal knowledge of her, must, on conviction, be punished at the discretion of the jury, by imprisonment in the penitentiary for not less than two nor more than ten years. Boys under 16 years of age are not within the terms of this particular statute. Section 5411, Code 1923.

James Christian, this appellant, was charged by indictment with the violation of the foregoing statute; and the evidence tended to show that he and one Clarence Alverson induced Audrey Hornbuckle, a girl fourteen years of age, to ride with them in an automobile. In this connection the young girl testified: "My name is Audrey Hornbuckle. I was fourteen years old in April 1931. I have known Jim Christian all my life. I was with him on the 27th day of April, 1931. I got with him on my way home from New Hope. I had been to New Hope to buy something for my mother. I had been away from my home about half an hour when I met Jim, and got in the car with him about a quarter of a mile from my home. I was alone. Jim asked me to get in and ride with him and I did so. Clarence Alverson was in the car also. I was on the back seat. They were both on the front seat. When we got to the corner where I was going home they wouldn't let me get out, and took me past home, and when we got down to the gravel pit they turned and went out there and stopped and made me get in the front seat with them. The gravel pit is beyond our house about two miles from New Hope. At the gravel pit I got out of the back seat and got on the front seat with them, and they turned and went on down the highway, and went on down to the bottom and stopped; turned and came back even with the woods and stopped again, and then commenced wanting me to get out with them and I wouldn't do it. They kept begging me and I told them I wouldn't and they said 'yes' 'I would,' and kept on. Alverson got out on the left side and Jim on the right of the car, and Alverson tried to pull me out and I would not get out—then Alverson got on the side where Jim was and both of them caught hold of my arms and pulled me out. Clarence took me out in the woods first and stayed about half an hour and when we came back Jim went with me. While I was out there with Jim, Uncle Glenn came up. I was having an intercourse with Jim Christian when my uncle came up. My uncle knocked Jim off of me. Jim's pants were left there and uncle Glenn got them. Jim Christian ran off. I tried to get away from Jim. He threw me down—pulled me down on the ground. He pulled off his coat and sat down on it and pulled me down."

Mrs. Will Hornbuckle, the mother of Audrey, testified that her daughter was 14 years of age, and on the day in question she had sent her to town for a spool of thread, and, after the girl had been gone some time and did not return, she sent her brother-in-law, Glenn Hornbuckle, in search of her.

State witness, Glenn Hornbuckle, testified:

"My name is Glenn Hornbuckle. Audrey Hornbuckle is my niece; she is fifteen years old now. James Christian is over sixteen years of age. I saw Audrey Hornbuckle and James Christian together in April 1931. I first saw them together that day down in the woods beyond New Hope, in Madison County, Alabama.

"The Solicitor then asked the witness, 'What was the occasion of your going out in search of Audrey Hornbuckle?' * * * Further answering this question the witness testified, 'her mother wanted me to go and look for her; asked me if I would and I told her that I would.' I went in my own car down toward Oak Grove about three and a half miles from New Hope. I drove up there at the edge of the woods and a car was parked there on the left side of the road, and Clarence Alverson came out of the woods something like fifteen yards, I guess from the fence, I guess close to that. I asked him about Audrey and he said that he didn't know; that he hadn't seen her. I said 'You are lying, you have seen her,' and he said 'No, he didn't know anything about it.' I asked him again and wanted to know where she was, and he said she is in the woods, and I struck him a lick or two with a stick I had, and went on in the woods. Before I got there I called Jim Christian,—I couldn't find him, and I called him two or three times, and he finally answered, 'What in the God Damned Hell do you want.' I reckon he thought I was Alverson calling. I went on out to where they was, and peeped through the bushes and saw him. I could see he was at the act with the girl or having intercourse with her. He had his pants off and everything. I don't remember what I said to him, I commenced to hit him with the stick. His pants were lying there close to him. Jim ran off. The night after that he was arrested. Jim's bloomers were there with his pants. The pants and bloomers that you have there were the ones I saw; the bloomers were on top of the pants. He had nothing at all on his legs. I took his pants and bloomers; carried them to the car and turned them over to sheriff. The belt with the 'J' on it were on the pants when I picked them up. This was in Madison county, Alabama. * * It was about three and a half miles from New Hope, where I found them. When I got there I first saw Clarence Alverson, and an automobile; it was the car that Alverson drove around; I don't know whose car it was. When I reached the scene I did not see Jim Christian at all. I asked Alverson where the young lady was, and he said she was over in the woods. I walked over in the woods and saw Jim Christian lying on my niece; I actually saw that. She was fourteen years old when this happened. * * * The ar-ticles of clothing found there belonged to Jim Christian; the young lady did not have her clothes off. I struck Jim a time or two; I don't remember how many times I hit him. Jim left there and the next time I saw him he was up here. He was arrested the same night. * * * I have known Audrey Hornbuckle all her life; I know that in April of 1931 she was fourteen years of age."

Will Hornbuckle, the next state witness, testified: "I am the father of Audrey Hornbuckle. She is my oldest child and was born August 16, 1915, about a year and fifteen days after our marriage. I was not at home but in Huntsville, the day of this occurrence with my daughter." On cross-examination he said: "I have been convicted of a felony." And on redirect examination he stated this conviction of felony was for killing Clarence Alverson, the other defendant in this case, about this same offense.

The testimony of Dr. W. W. Walls was to the effect that as physician, the next day after the commission of the alleged offense, he examined Audrey Hornbuckle, and his testimony tended to corroborate the girl in question as to her having been penetrated, etc.

The defendant alone testified in his own behalf; there was but slight conflict in the testimony as given by the state witnesses and that of the defendant except that he denied having sexual intercourse with the young girl, although he admitted he was off in the woods with her with his trousers off at the time her uncle arrived. He also admitted he ran away from the scene of the alleged crime without his clothing, went in that condition to his home some miles away, and from there to Huntsville where he was arrested.

From the foregoing, it can be readily seen that a jury question was presented. The jury returned a verdict of guilty, and fixed his punishment at imprisonment in the penitentiary for 8 years. We think the verdict was warranted by the evidence, and cannot uphold the insistence of appellant that the punishment inflicted was excessive. As a result of his and Alverson's voluntary acts, Alverson occupies an untimely grave. The child's father is in the penitentiary. This appellant must also serve his sentence therein; and in addition to all this several homes are broken and many hearts are saddened and much sorrow and distress prevails. The punishment, we think, is merciful and just, under the circumstances, and hardly commensurate with the crime and the deplorable resultant effects as a result thereof.

Appellant's motion for a new trial upon the ground that the punishment imposed by the jury was highly excessive and unreasonable was, for the reasons stated, properly overruled. The other grounds of the motion are equally untenable.

██ As to the age of the injured girl, the evidence conclusively developed she was only fourteen years old at the time complained of; and the court properly excluded from the jury the family Bible in which was recorded the date of her birth. Bradley v. State, 21 Ala. App. 542, 110 So. 157 (on rehearing). The rule as declared in the Bradley Case, supra, is to the effect, "An entry in a family Bible stating the fact and date of birth of a member of the family is competent evidence, and may be admitted where the person who made it is dead or unknown," or inaccessible. But where the entrant, or person who made the entry, is present or available as a witness, no necessity existed for the reception of the entry, etc.

There is no error of a reversible nature, and the record proper is regular in all things. Let the judgment of conviction from which this appeal was taken stand affirmed.

Affirmed.