Glendon COMBS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Oct. 18, 1957.

F. Vernon Faulkner, Hazard, for appellant.

Jo M. Ferguson, Atty. Gen., David Sebree, Asst. Atty. Gen., for appellee.

MILLIKEN, Judge.

Glendon Combs, the appellant, shot and killed Ralph Fugate with a single blast from

a 16-gauge shotgun in broad daylight on June 2, 1956, while Fugate was standing on the porch of Combs' home. The appellant was convicted of voluntary manslaughter and sentenced to five years in the penitentiary. There were no witnesses to the slaying except the appellant, who did not deny that he killed Fugate. He did deny that it was murder, however, and since his theory of the case is the basis for this appeal, it will be set out in detail. He insists that he was entitled to an instruction on defense of his home as well as an instruction on self-defense, which latter instruction, of course, was given.

At the trial Combs testified that he and the deceased formerly were friends and occasional associates, but had had an altercation several weeks prior to the slaying which had resulted in a parting of the ways. On this prior occasion Fugate and another man came to Combs' house one evening and asked him to give them some supper. Combs, who had lived there alone for some three years since he and his wife had separated, was frying some chicken at the time, and he told them he would feed them as soon as the chicken was ready. Fugate sat down and, according to Combs, swallowed some pills called "yellow jackets." Shortly thereafter, without any warning, Fugate leaped to his feet, turned over the skillet full of chicken, turned over the table, breaking all the dishes, and then lay down on Combs' bed. Later, when he was persuaded to leave, Fugate promised Combs that he would never come around his house again.

According to Combs' uncontradicted story, this was the state of affairs between the two for some time before the slaying occurred. Early in the morning of that fatal day, Combs and some of his friends went to Walkertown, or North Hazard, where Combs purchased a half pint of whisky and two quarts of beer. He was then driven to his home, arriving there about 10:30 in the morning. He hid the half pint of whisky and one of the quarts of beer in the weeds in his yard and took the other quart of beer into the house. He opened this bottle and drank it, leaving the empty bottle on the porch. After sitting around the house for awhile and at about 1:30 in the afternoon, he lay down on the foot of his bed, which was near the door of the house, leaving the door open. The next thing he knew, Fugate was standing over him, saying: "Get up, God damn ye, I'm gonna whup ye." Combs tried to get up, but Fugate struck him on the side of the head, knocking him back on the bed. When he straightened up the second time Fugate kneed him in the groin, but Combs shoved him back and then grabbed him close so that Fugate couldn't hit him. He shoved Fugate up against the fireplace, and then toward the door.

It is not clear at this point whether Fugate was shoved through the open door or whether he was shoved part way and staggered or walked to the edge of the porch, but he went out the door and made one step out of the house in front of the door. He then "jobbed" his left hand into his pocket, wheeled around, and said: "I'm agonna kill ye." Upon hearing this, Combs reached into the corner beside his bed and grabbed his shotgun. He went over toward the fireplace, next to the door, holding his shotgun along his side, in the ready position. Fugate then said, "God damn ye, I'm gonna kill ye," and Combs replied, "What fer? What in this world have I done to you?" Fugate retorted, "You told me to stay away from here, didn't you," and Combs answered, "Yeah, what are you doing back here," to which Fugate replied, "To just show you that I ain't afraid of ye, I'm here ain't I." Combs then said: "You ought to go on somewhere, and get away from here. I told you not to come here. I told you before. You broke up my dishes and everything I had in the kitchen and I told you then, and you promised me then that you wouldn't come back here no more. Now here you are, making trouble for me agin." Fugate then said, "I don't have to shoot you," and with that he grabbed the quart beer bottle and raised it up and Combs brought his shotgun up to the hip position

and fired at Fugate. The shot struck Fugate in the area of the right eye and tore most of the top of his head off, killing him instantly. Combs estimated that the range was two and a half to three feet. On cross-examination, Combs said: "Well, when he drew the bottle and started to step up in the door, I just brought the gun up like that, and fired it." Combs declared on redirect examination, "I killed him to save my own life."

 The foregoing testimony has been related in detail because of the alleged error of the trial court in failing to give an instruction on defense of the home, a contention relied upon by appellant for reversal of the judgment. However, it must be emphasized that the appellant, in his testimony, did not specifically assert any intention to defend his home; it was his own personal danger which motivated his action according to his plea of self-defense.

It is the consensus of the Court that the evidence does not indicate a case of defense of the home, but simply a case of self-defense. Whether it is necessary for other persons to be present in a home, or whether a threat to damage the property in the home or the house itself, are prerequisites to a defense-of-the-home instruction, it is not necessary for us to decide at this time. It is the view of the Court that the mere fact that the shooting occurred on the porch of the appellant's home is not in itself sufficient to justify giving a defense-of-the-home instruction, and that the jury undoubtedly took into consideration the situs of the shooting in deciding the crucial issue of whether the appellant was justified in using the amount of force he did in repelling the attack of the deceased. We have not discussed former opinions involving defense of the home because we do not find them helpful on the facts of this case, but see Carroll v. Commonwealth, 221 Ky. 557, 299 S.W. 183; Adkins v. Commonwealth, 293 Ky. 329, 168 S.W.2d 1008; Thomas v. Commonwealth, 195 Ky. 623, 243 S.W. 1; Duff v. Commonwealth, 250 Ky. 555, 63 S.W.2d 593.

We are, therefore, of the opinion that the appellant's rights were not prejudiced by the failure of the trial court to instruct on defense of the home.

 Appellant also contends that the verdict of the jury was not supported by the evidence, but we find this contention to be without merit.

Judgment affirmed.